<u>**VIRGINIA:**</u>

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, March 4, 2011.

Present: Kinser, C.J., Goodwyn and Millette, JJ., and Carrico, Lacy and Koontz, S.JJ.

Ricky Jovan Gray,                                    Petitioner,

against    Record No. 080524

Warden of the Sussex I State Prison,          Respondent.

Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed March 14, 2008, and the respondent's motion to dismiss, the Court is of opinion that the writ should be granted in part and dismissed in part.

Petitioner, Ricky Jovan Gray, was convicted in the Circuit Court of the City of Richmond of capital murder in the commission of a robbery or attempted robbery under Code § 18.2-31(4), capital murder of more than one person as part of the same transaction under Code § 18.2-31(7), capital murder of more than one person within a three-year period under Code § 18.2-31(8), and two counts of capital murder of a person under the age of fourteen by a person age twenty-one or older under Code § 18.2-31(12). The crimes concerned the killing of four members of a family during a home invasion robbery. After finding the aggravating factor of vileness, the jury fixed petitioner's sentence at death for each of the two convictions under Code § 18.2-31(12) and life imprisonment

1

for each of the three remaining capital convictions.  The trial

court sentenced petitioner in accordance with the jury's verdicts.

This Court affirmed petitioner's convictions and upheld his

sentence of death in Gray v. Commonwealth, 274 Va. 290, 295, 645

S.E.2d 448, 451 (2007), cert. denied, 552 U.S. 1151 (2008).

I.

In claim (IV), petitioner alleges he was denied the effective

assistance of counsel because counsel failed to protect

petitioner's rights to be free from double jeopardy.  Petitioner

contends he was tried and punished for separate counts of capital

murder under Code §§ 18.2-31(7) and (8) even though the crimes

arose from the same criminal act and "one punishment is for a crime

which is a lesser included offense of the other."  Furthermore,

petitioner contends that counsel failed to advise petitioner that a

non-frivolous ground for appeal existed, namely that petitioner's

rights against double jeopardy had been violated as alleged in

claim (IV).

The Court holds that claim (IV) satisfies the "performance"

and the "prejudice" prongs of the two-part test enunciated in

Strickland v. Washington, 466 U.S. 668, 687 (1984).  As this Court

held in Andrews v. Commonwealth, 280 Va. 231, 287-88, 699 S.E.2d

237, 269-70 (2010), the double jeopardy prohibition against

multiple punishments is violated when a defendant receives separate

sentences under Code §§ 18.2-31(7) and (8) when each of the

constituent murders for both convictions occurred as part of the

2

same act or transaction.  There is a reasonable probability that, but for counsel's failure to raise this issue at trial, the Commonwealth  would have been permitted to proceed to sentencing on only one of the two indictments.  Therefore, petitioner is granted a writ of habeas corpus as to his life sentences imposed under Code §§ 18.2-31(7) and (8), and these convictions are remanded and the Circuit Court of the City of Richmond is directed to exercise its discretion to vacate one of the underlying convictions.  See Ball v. United States, 470 U.S. 856, 864 (1985).

## II.

The remainder of the petition is dismissed for the reasons as follows:

In a portion of claim (I), petitioner alleges that the Commonwealth improperly concealed material and exculpatory evidence and knowingly made false representations in violation of the holdings in Brady v. Maryland, 373 U.S. 83 (1963), and Napue v. Illinois, 360 U.S. 264 (1959).  During argument at petitioner's October 23, 2006 sentencing hearing, the prosecutor commented that Ray Dandridge, who had participated in the murders of the family members, had pleaded guilty to capital murder and been sentenced to life imprisonment in connection with another set of murders, "was one or two points above the level of retardation, depending on when in his life he was tested and depending on who tested him."  Petitioner contends that the comment was made to undercut petitioner's argument that Dandridge was relatively more culpable

3

in the crimes and that petitioner's sentence should be proportional to the life sentence Dandridge received. Relying on a September 2006 report prepared by a mental health expert in anticipation of Dandridge's capital murder trial for the other set of murders, petitioner contends that the Commonwealth was aware that its representations about Dandridge were false. Petitioner contends further that the report was not made available to him.

The Court holds that this portion of claim (I) is without merit. The September 2006 capital sentencing evaluation report of Dandridge, proffered by petitioner in support of his petition for a writ of habeas corpus, demonstrates that Dandridge had taken a number of I.Q. tests during the course of his life and that his performance I.Q. score in 2006 was two points above the legal threshold under which one could be classified as being mentally retarded in Virginia. See Johnson v. Commonwealth, 267 Va. 53, 75, 591 S.E.2d 47, 59 (2004), vacated on other grounds, 544 U.S. 901 (2005). As a result, the prosecutor's comment that Dandridge scored a few points above the cut-off for determining mental retardation, "depending on when in his life he was tested and depending on who tested him," did not violate Napue because it was not false.

Furthermore, petitioner has failed to show that Dandridge's evaluation report was material to petitioner's case. Evidence is only material if its suppression would undermine the confidence in the outcome of the trial. Teleguz v. Commonwealth, 273 Va. 458,

4

488, 643 S.E.2d 708, 727 (2007). The record, including the September 2006 evaluation report, the trial and sentencing hearing transcripts, and petitioner's pre-sentence report, demonstrates that Dandridge's evaluation occurred after the jury returned with its findings of guilt and recommendations as to the sentences petitioner should receive. Petitioner has failed to prove that the court would not have imposed the death sentence as the jury had recommended had the report been made available to petitioner prior to being sentenced by the court.

In another portion of claim (I), petitioner alleges that the Commonwealth presented misleading testimony from Detective Howard Peterman, who testified that a written narrative of petitioner's interview constituted the entirety of petitioner's statement. Detective Peterman denied that he had informed petitioner about anything that Dandridge had told the police. Petitioner claims that Detective Peterman's testimony conflicts with petitioner's recollection that Detective Peterman had provided petitioner with information obtained from Dandridge. Petitioner contends also that Detective Peterman provided inconsistent testimony a year and a half after petitioner's trial during a pretrial hearing in Culpeper County. At that time, Detective Peterman stated that he had spoken with petitioner about the murders before he memorialized the statement into writing.

The Court holds that this portion of claim (I) is barred. Petitioner was present during the interview and, therefore, knew

5

what Detective Peterman said to him, whether the written statement covered the entirety of petitioner's interview, and whether Detective Peterman's testimony was truthful. Thus, this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29-30, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

In another portion of claim (I), petitioner alleges that during closing arguments, the prosecutor falsely told the jury that petitioner was not "under the influence of anything" when he committed the murders even though petitioner had told the police when he was arrested that he was on "PCP" on the day of the murders.

The Court holds that this portion of claim (I) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Id.

In claim (I), footnote (2), petitioner alleges: "Should the Court determine that claims alleged herein are defaulted because counsel could have presented the claim[s] at trial and on appeal, [petitioner] alleges that he was deprived of his right to effective representation under Strickland . . . by counsel's failure to investigate and present the claims set out herein under Brady and Napue."

6

The Court holds that this portion of claim (I) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of counsel, demonstrates that petitioner did not inform counsel that he had been provided details of the crimes, and that, despite his statement that he was on PCP the day of the murders, petitioner assured counsel that "PCP could not be to blame" as petitioner "knew what he was doing." Counsel made a tactical decision not to try to blame petitioner's actions on his use of drugs because counsel decided that a defense of intoxication would detract from the best defense at sentencing, which would be to focus on the abuse petitioner suffered as a child. Additionally, assuming counsel had Dandridge's September 2006 mental evaluation, petitioner cannot demonstrate that counsel should have used the report to rebut the Commonwealth's argument. The report did not indicate that Dandridge controlled petitioner but rather contained information that Dandridge believed petitioner had tricked him and that Dandridge suffered mental health issues. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (I), footnote (4), petitioner alleges, "For each claim stated herein, . . . trial counsel failed to provide

7

effective assistance of counsel by properly preserving and presenting each claim on appeal."

The Court holds that this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate what steps, or additional steps, he contends counsel should have taken to preserve these issues, and fails to articulate the appellate arguments he contends counsel should have raised in support of these issues. Furthermore, the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (II), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate, develop, and present evidence of the relative culpability between petitioner and Dandridge. Petitioner claims that counsel failed to discover that Dandridge was a "troublemaker and a leader," who could assert his will over others, and who had led petitioner into criminal activity.

The Court holds that this portion of claim (II) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the

8

transcript from the sentencing hearing, demonstrates that counsel argued that the notion that Dandridge was "some borderline idiot doing whatever [petitioner] says is nonsense" and that Dandridge was equally culpable in the murders. Counsel was attempting to argue that because Dandridge received life sentences for his role in a different set of murders committed by both men, petitioner, likewise, should receive life sentences for killing the children. Additionally, the record, including the affidavit of counsel and petitioner's statement to the police, demonstrates that petitioner claimed that Dandridge played a minimal role in the murders of the family members. Petitioner fails to provide any evidence to show what effect, if any, Dandridge's background as an alleged troublemaker or leader played in light of the fact that petitioner confessed to the murders. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (II), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate whether the police made petitioner aware of statements from Dandridge before the police interviewed petitioner. Petitioner contends that such information was important, as it would have caused the jury to question petitioner's relative culpability for the crimes in relation to Dandridge.

9

The Court holds that this portion of claim (II) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, the transcript from the hearing in the Circuit Court of Culpeper County, and the affidavit of counsel, demonstrates that Detective Peterman consistently testified that petitioner was never provided with any information police had obtained from Dandridge before or during petitioner's interview. Although petitioner alleges that the police gave him information from Dandridge's statement, he fails to provide any evidence to corroborate the allegation. Additionally, the record, including the affidavit of counsel and the statement petitioner gave to the police, demonstrates that petitioner minimized the role Dandridge played in the murders. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (II), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate the physiological effects "PCP" use had on petitioner's memory. Petitioner contends that such information would have shown that the drug affects brain cells and would have called into question the statements petitioner gave to the police.

The Court holds that this portion of claim (II) satisfies neither the "performance" nor the "prejudice" prong of the two-part

test enunciated in Strickland.  The record, including the affidavit of counsel and the trial transcript, demonstrates that petitioner stated that "PCP could not be to blame" for his actions as petitioner "insisted that he knew what he was doing" and that petitioner's statement to the police contained details about the murders consistent with the evidence discovered by the police. Petitioner fails to proffer the names of any witnesses counsel should have spoken to or what information those witnesses would have provided to counsel about the effects of PCP.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (III), petitioner alleges he was denied the effective assistance of counsel because counsel failed to make a reasonable investigation of petitioner's statements to the police.  Petitioner contends that an investigation would have shown that at the time he talked to the police, petitioner could not remember the details of the incident because he was under the influence of drugs when the murders were committed and that the police provided petitioner with details from Dandridge's statement. Petitioner claims that, had this evidence been adequately investigated, counsel could have either moved to suppress petitioner's statement or used the information to impeach the credibility of Detective Peterman's testimony.

11

The Court holds that this portion of claim (III) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of counsel, demonstrates that petitioner insisted to counsel that he knew what he was doing when he committed the murders and that "PCP could not be to blame." Furthermore, counsel spoke to every officer involved in petitioner's arrest, including Detective Peterman, and determined that petitioner was not provided any details from Dandridge's statement before or during his statement to the police. The affidavit of counsel also demonstrates that petitioner never informed counsel that Detective Peterman had "fed" him the details of the crimes or of Dandridge's statements to police and that counsel looked for but could not find any evidence that would have supported a motion to suppress petitioner's statements to police. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (III), petitioner alleges he was denied the effective assistance of counsel because counsel failed to protect petitioner's right to be free from self-incrimination by not moving to suppress petitioner's statements to the police that were later admitted at trial.

The Court holds that this portion of claim (III) satisfies neither the "performance" nor the "prejudice" prong of the two-part

12

test enunciated in Strickland. The record, including the trial transcript, petitioner's statement to the police, and the affidavit of counsel, demonstrates that petitioner understood his constitutional rights and voluntarily agreed to speak to the police about the murders and that counsel looked for but could not find any evidence that would have supported a motion to suppress petitioner's statements to police. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V), petitioner alleges he was denied the effective assistance of counsel because counsel failed to protect petitioner's rights to plead guilty and to have sentencing factors determined in a constitutional manner. Petitioner contends that counsel should have objected to the fact that, in order to plead guilty in Virginia, a defendant must waive his right to have a jury determine his sentence. Petitioner avers that the arrangement in Virginia, which allows only a court to determine the appropriate sentence when a defendant pleads guilty, is a violation of the Sixth Amendment under the decisions in Blakely v. Washington, 542 U.S. 296 (2004), Ring v. Arizona, 536 U.S. 584 (2002), and Apprendi v. New Jersey, 530 U.S. 466 (2000).

The Court holds that claim (V) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of

13

counsel, demonstrates that counsel advised petitioner not to plead guilty in order to preserve his right to appeal and that petitioner understood and agreed with that advice.  Petitioner fails to allege that he would have pleaded guilty or that his sentences, which were determined by a jury, would have been different if the procedures in Virginia were different.  Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object during closing argument at the guilt phase of petitioner's trial to the Commonwealth's statements that petitioner "offered no apology, he offered no remorse" and that petitioner "never said he was under the influence of anything."  Petitioner contends that by making these statements the prosecutor impermissibly commented on petitioner's failure to testify.

The Court holds that claim (VI) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavit of counsel, demonstrates that the statements were not a comment on petitioner's failure to testify at trial but rather called the jury's attention to petitioner's demeanor and responses during his confession to police.  Furthermore, although petitioner alleges that counsel's failure to object undermined confidence in the

14

jury's decisions, he fails to allege that he would have been found not guilty or would have received a different sentence had counsel objected to the prosecution's argument.  Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (VII), petitioner alleges he was denied the effective assistance of counsel because counsel failed to ensure that the jurors were properly instructed regarding the meaning of the "vileness" factor.  Petitioner contends that after counsel unsuccessfully moved the court to declare Virginia's capital sentencing statutes unconstitutional because, under Godfrey v. Georgia, 446 U.S. 420 (1980), the definition for "vileness" was constitutionally inadequate, counsel should have offered an additional instruction regarding the meaning of the vileness factor.  Petitioner argues that counsel's failure to proffer the instruction waived the issue on appeal and that, had counsel proffered the proper instruction, there was a reasonable likelihood that a juror would have decided to sentence petitioner to life imprisonment.

The Court holds that this portion of claim (VII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the jury instructions and the trial transcripts, demonstrates that the instruction provided to the jury tracked the language provided in

15

the statute and properly defined vileness.  As such, the instruction was proper and did not run afoul of the holding in Godfrey.  See Bunch v. Commonwealth, 225 Va. 423, 446-47, 304 S.E.2d 271, 284-85 (1983) (addressing Godfrey and holding that no additional instructions are needed if the instruction given by the court tracks the statutory language).  In addition, petitioner fails to provide the additional vileness instructions he contends counsel should have offered at trial.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (VII), petitioner alleges he was denied the effective assistance of counsel because counsel failed to ensure that the jurors were properly instructed that the legal impact of a non-unanimous decision would be a life sentence for petitioner.  When the jury asked about the outcome if a non-unanimous decision was reached, the court declined to answer the question.  Petitioner contends that counsel's failure to have the question answered "interfered with [the] jurors' ability to give effect to mitigating evidence" by causing the jury to believe that "any decision, even decisions as to mitigating evidence, must be unanimous."

The Court holds that this portion of claim (VII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  Petitioner fails to proffer any

16

evidence to demonstrate that the jury was referring to mitigating evidence when it submitted its question to the court. Petitioner also fails to articulate how refusing to answer the jury's question about the outcome if it were not able to arrive at a unanimous decision, "impermissibly interfered with [the] jurors' ability to give effect to mitigating evidence." This Court has previously rejected the argument that a jury should be instructed that its finding as to individual mitigating factors "need not be unanimous." Juniper v. Commonwealth, 271 Va. 362, 431, 626 S.E.2d 383, 426 (quoting Clark v. Commonwealth, 220 Va. 201, 212, 257 S.E.2d 784, 791 (1979)), cert. denied, 549 U.S. 960 (2006). Counsel was not unreasonable for not requesting an unnecessary instruction, as the instruction provided by the court that the jury's decision regarding punishment had to be unanimous did not prevent the jury from considering mitigating evidence. Jackson v. Warden, 271 Va. 434, 448, 627 S.E.2d 776, 788-89 (2006), cert. denied, 549 U.S. 1122 (2007). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VIII)(a), petitioner alleges he was denied the effective assistance of counsel because counsel failed to make further inquiry of juror Carol Chaffin and failed to request a mistrial after two jurors reported to the trial court that Chaffin had spoken to a friend about the case, had looked at a newspaper,

17

and had made inappropriate comments. The trial court questioned jurors Elizabeth Ransom and Sharon Dabney, who explained that Chaffin had remarked that a friend had told her that the newspaper had identified the make-up of the jury by race and gender, that Chaffin had noticed sketched drawings of the jurors on the front page of the paper, and had queried why petitioner would want to go to prison to be sexually molested every day by other inmates. Chaffin denied having discussed the case with any person, or reading the newspaper, although Chaffin did state that she picked up the newspaper and noticed a drawing on the outside of the paper. Chaffin admitted making the statement about petitioner going to prison, but denied having made up her mind as to the sentence petitioner should receive. Petitioner contends that the evidence adduced during the inquiry was insufficient to rebut the presumption of prejudice that arises after "[a]ny private communication with a juror," and that a mistrial should have been requested and granted. Petitioner contends further that counsel should have made further inquiry of Chaffin.

The Court holds that claim (VIII)(a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner fails to state what additional inquiry counsel should have conducted or what Chaffin's responses would have been. Furthermore, the record, including the trial transcript, demonstrates that no juror's name or picture had appeared in the paper. The court and counsel accepted Chaffin's

18

denials and Chaffin's, Ransom's and Dabney's assurances that they could keep an open mind and had yet to determine what penalty petitioner should receive.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (VIII)(b), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object to petitioner's absence during the questioning of Chaffin or failed to obtain a waiver from petitioner regarding his presence in violation of petitioner's rights under Code § 19.2-259 and the Sixth and Fourteenth Amendments.  Petitioner contends he would never have waived his appearance at the hearing, and, if he had been present, would have "insisted counsel question the jurors further and request a mistrial."

The Court holds that this portion of claim (VIII)(b) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the trial transcript and the affidavit of counsel, demonstrates that counsel waived petitioner's presence at the hearing and that counsel did not believe petitioner was needed, as counsel wanted the court to address the matter immediately, and did not believe petitioner's presence would have aided the inquiry.  See Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (holding a defendant has the right to be present at critical stages of the criminal proceeding if his presence would contribute

to the fairness of the procedure). The record, including the trial transcript and the affidavit of counsel, demonstrates that counsel agreed to speak with petitioner and that counsel would revisit the issue with the court if petitioner had any concerns; petitioner did not. Petitioner has failed to show that his presence at the hearing would have aided counsel because petitioner has not proffered what additional questions he contends counsel should have asked or what the responses would have been. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (VIII)(b), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object to the court's finding that its instructions to the jury had not been breached.

The Court holds that this portion of claim (VIII)(b) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the court instructed the jury not to talk to anyone or to read, watch, or listen to any news about the trial. During the inquiry, Chaffin informed the court that she had followed the instructions. At no other point in the trial was the court ever presented with evidence that any other member of the jury had not complied with the court's instructions. Petitioner has failed to present any such evidence. Thus, petitioner has

20

failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (VIII)(b), petitioner alleges he was denied the effective assistance of counsel because counsel failed to memorialize in a transcript the discussions with and about Chaffin for petitioner to review. Petitioner contends that the transcript does not contain the entirety of the inquiry.

The Court holds that this portion of claim (VIII)(b) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavit of counsel, demonstrates that the court offered to have a transcript prepared if one was needed to aid counsel in discussions with petitioner about the hearing. However, no transcript was needed as counsel informed petitioner about the hearing before court reconvened and petitioner stated that he had no concerns about any particular juror or the jury in general. Petitioner fails to state how a transcript of the hearing would have aided his discussions with counsel or would have altered the court's handling of the matter. Furthermore, petitioner fails to state the basis for his assertion that the transcript contained in the record is incomplete, fails to provide evidence to verify this assertion, and fails to proffer what he contends took place but was not recorded. Thus, petitioner has failed to demonstrate

21

that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel at the sentencing phase of trial because counsel presented only limited testimony, which failed to demonstrate how petitioner's life experiences affected his personal and moral development and culpability, and which failed to "provide a comprehensive and accurate picture of [petitioner's] life." Petitioner contends that counsel failed to present evidence of the "poverty, chaos, neglect and toxic environment" in which petitioner was raised. In support of this claim, petitioner presents affidavits from petitioner's father, mother, sister, half-sisters, half-brother, cousin, uncle, aunt, grandmother, Dandridge, petitioner's case manager, petitioner's probation officer, and a director of a community center. These potential witnesses state that they were available had counsel attempted to contact them and that they would have testified concerning petitioner's addiction to drugs, the physical and sexual abuse petitioner was subjected to as a child by his father and half-brother, the absence of petitioner's parents for portions of his childhood, and the environment of drugs and crime petitioner was exposed to where he lived.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part

test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel presented the same information through the testimony of petitioner's mother and sister. "[C]ounsel's 'decision not to seek more' mitigating evidence from [petitioner's] background 'than was already in hand' [falls] 'well within the range of professionally reasonable judgments.' " Bobby v. Van Hook, 558 U.S. ___, 130 S.Ct. 13, 19 (2009) (quoting Strickland, 466 U.S. at 699). Additionally, petitioner is unable to show that he suffered any prejudice as a result of counsel not interviewing the additional witnesses as any testimony they would have provided would have added no new relevant information at sentencing. Id. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel at the sentencing phase of trial because counsel failed to present documentary evidence of the abuse petitioner suffered as a child, which would have corroborated the testimony and other evidence that was presented. In support of this claim, petitioner references a 1996 pre-sentence report, a 2000 pre-sentence report, a 2004 intake report in which both petitioner and his grandmother discussed the abuse, and a photograph that showed the difference in size between himself and the half-brother who sexually abused him.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the affidavit of counsel, demonstrates that petitioner did not want to testify about the abuse and counsel had no other basis upon which he could introduce the otherwise hearsay statements contained in the reports.  Furthermore, this information was cumulative of the testimony provided by the mother and sister about the physical abuse done by petitioner's father and the sexual abuse at the hands of petitioner's half-brother.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel at the sentencing phase of trial because counsel failed to present any evidence that petitioner suffers from post-traumatic stress disorder (PTSD) as a result of his upbringing.  In support of this claim, petitioner provides an affidavit from petitioner's case manager from 2004-05, which stated that dealing with PTSD issues was one of petitioner's goals.  Petitioner also provided records that note that petitioner suffers from sleeping disorders and affidavits from Drs. David Lisak and Mark Cunningham that petitioner has symptoms of PTSD.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part

24

test enunciated in Strickland.  Petitioner fails to provide any evidence to show that he has ever been diagnosed with having PTSD by anyone qualified to make such a diagnosis.  The record, including the affidavit of counsel, demonstrates that there was no admissible evidence that petitioner suffered from PTSD.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present any expert testimony to explain petitioner's drug use and the impact it had on petitioner's "moral culpability and behavior."  Petitioner claims that Drs. Lisak and Cunningham could have explained that petitioner's early use of drugs stemmed from either the abuse he suffered or from modeling the behavior of the adults in his life who were using drugs, that drugs become a primary motivator in the life of a traumatized child, and that PCP is a drug used by abuse survivors.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the affidavit of counsel and the trial transcript, demonstrates that Dr. Lisak's videotaped deposition was played for the jury.  Dr. Lisak opined generally regarding the effects of physical and sexual abuse and

25

substance abuse on children.  Dr. Lisak also testified that he would not be surprised to learn after hearing about the experiences petitioner had as a child, that petitioner had murdered several people in a relatively short period of time.  Dr. Lisak, however, had not personally evaluated petitioner.  Furthermore, petitioner repeatedly told counsel that drugs were not to blame for his actions because petitioner knew what he was doing.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present evidence of petitioner's redeeming qualities and the attempts petitioner made to improve himself.  In support of this claim, petitioner provides information that while petitioner was in a pre-release center in Maryland in 2004 and 2005 petitioner had no infractions, never failed a drug test, was a role model for other prisoners, and did well on work release.  Petitioner also provides information that, days before the murders, he attempted to find work and volunteered to fix a furnace in a church.  Petitioner contends that this information would have provided a more complete picture of his life and would have made a compelling case for a life sentence.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of counsel and the trial transcript, demonstrates that counsel was never made aware of any witnesses from the church. On the other hand, counsel was aware of petitioner's employment and school records but found nothing that would help petitioner's mitigation case. Counsel only presented evidence of petitioner's positive character when it could be placed in context, such as the testimony from the community relations sergeant for the City of Richmond's Sheriff Office that petitioner would speak to school children about staying out of trouble. Petitioner has failed to show that even if the information he raised had been presented it would have resulted in petitioner only receiving a life sentence for the brutal murders he admitted to committing. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present expert testimony to aid the jury in assessing the mitigating evidence and petitioner's background and relating it to the impact it had on petitioner's "moral culpability." Petitioner contends that Dr. Cunningham could have provided testimony regarding petitioner's life experiences and his behavior by showing

27

the jury studies and scientific literature on the effects petitioner's adverse background and substance abuse had on his behavior and development.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of counsel and the trial transcript, demonstrates that Dr. Lisak's videotaped deposition played for the jury included his expert testimony regarding the relationship between childhood abuse and its later impact on the development of people and violence in men, the factors that would predict if a person would be violent, and the studies that have been done. Petitioner has failed to show that even if the information he contends Dr. Cunningham would have testified about were presented it would have resulted in petitioner receiving a different sentence than the one he received. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (X), petitioner alleges that the cumulative character of counsel's performance and the resulting prejudice deprived petitioner of the effective assistance of counsel.

The Court holds that petitioner's claim (X) is without merit. As addressed previously, petitioner has failed to demonstrate prejudice as a result of counsel's alleged errors. "Having

rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz v. Warden, 267 Va. 318, 340, 593 S.E.2d 292, 305, cert. denied, 542 U.S. 953 (2004).

### III.

Upon further consideration, petitioner's Motion for Leave to Supplement His Appendix and the respondent's Motion for Leave to File Supplemental Affidavits are granted. Petitioner's Motion for an Evidentiary Hearing, Motion for Discovery, Motion to Strike the Warden's Affidavit, and notice regarding the warden's Motion to Dismiss are denied. Respondent's Motion to Strike Affidavits is denied. Respondent's Motion to Strike Appendix Entries is denied in part with regard to Dr. Lisak's affidavit, but granted in part with regard to Judith A. McClendon's affidavit and the May 26, 2006 letter from John B. Boatwright, III. Respondent's Motion for Leave to File a Supplemental Motion in response is granted in part with regard to the supplemental response to the portion of claim (IX) involving Dr. Lisak's affidavit and is denied in part as to the respondent's remaining supplemental responses.

### IV.

For these reasons, a limited grant of the writ of habeas corpus shall issue to remand petitioner's convictions under Code §§ 18.2-31(7) and (8) to the Circuit Court for the City of Richmond. The remainder of the petition is dismissed.

29

This order shall be published in the Virginia Reports. The Clerk of this Court shall certify copies of this order to counsel for the petitioner, to the respondent, to the Clerk of the Circuit Court of the City of Richmond, and to the Attorney General of Virginia, which certification shall have the same force and effect as if a writ of habeas corpus were formally issued and served.

A Copy,

Teste:

Patricia L. Harrington, Clerk