**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-5**

---

RICKY JOVAN GRAY,

Petitioner - Appellant,

v.

DAVID ZOOK, Warden, Sussex I State Prison,

Respondent - Appellee.

---

**No. 14-3**

---

RICKY JOVAN GRAY,

Petitioner - Appellant,

v.

DAVID ZOOK, Warden, Sussex I State Prison,

Respondent - Appellee.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.    Anthony J. Trenga, District Judge.    (1:11-cv-00630-AJT-TCB)

---

Argued:  September 15, 2015        Decided:  November 25, 2015

---

Before WYNN and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

---

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Wynn joined.  Senior Judge Davis wrote a separate opinion concurring in part and dissenting in part.

———————

**ARGUED**: Elizabeth Hambourger, CENTER FOR DEATH PENALTY LITIGATION, Durham, North Carolina; Robert Edward Lee, Jr., VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Charlottesville, Virginia, for Appellant.  Matthew P. Dullaghan, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.  **ON BRIEF**: Jonathan P. Sheldon, SHELDON & FLOOD, PLC, Fairfax, Virginia; David Weiss, CENTER FOR DEATH PENALTY LITIGATION, Durham, North Carolina, for Appellant.  Mark R. Herring, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

———————

DIAZ, Circuit Judge:

Ricky Jovan Gray appeals the district court's denial of his petition for a writ of habeas corpus. His appeal presents two questions. First, whether the Supreme Court of Virginia, in resolving factual disputes regarding an ineffective-assistance-of-counsel claim without an evidentiary hearing, made an "unreasonable determination of the facts" under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(2). Because we find that the state court did not ignore Gray's evidence or otherwise reversibly err in resolving factual disputes on the record, we reject this first challenge. The second question is whether Gray may belatedly raise in the district court a claim of ineffective assistance of trial counsel under the Supreme Court's decision in Martinez v. Ryan, 132 S. Ct. 1309 (2012). We find that the claim Gray seeks to raise was presented to, and decided by, the state court. Therefore, it is not subject to de novo review in the district court under Martinez.

Accordingly, we affirm the judgment of the district court.

I.

A.

On the morning of January 1, 2006, in the course of a home burglary, Gray murdered Bryan and Kathryn Harvey and their two

3

young daughters, Ruby and Stella, by tying them up in their basement and then cutting their throats, stabbing them, striking them with a claw hammer, and setting fire to their home. Although Gray was with two accomplices, Ray Dandridge and Ashley Baskerville, Gray confessed to having committed all of the killings. The police officer who took Gray's confession, Detective Howard Peterman, testified at trial to the circumstances in which Gray confessed. He also read the confession to the jury.

The trial was conducted in two phases. In the guilt phase, the jury convicted Gray of five counts of capital murder. In the penalty phase, the Commonwealth introduced evidence of several other killings Gray had committed near the time of the Harvey murders, including bludgeoning his wife with a lead pipe two months earlier and suffocating Baskerville and her mother and stepfather a week after the Harvey murders. Gray offered evidence of his parents' abuse and neglect during his childhood, his repeated sexual abuse at the hands of his brother from a very early age, and Gray's consistent drug use, beginning when he was young. He also offered expert testimony to connect this evidence to his later violent behavior. Dr. David Lisak, a psychologist who did not examine Gray, opined on the potential connection between Gray's childhood abuse and his violent behavior as an adult. Dr. Mark Cunningham, a clinical and

4

forensic psychologist who did examine Gray, testified that Gray was unlikely to be seriously violent in prison.

The jury issued verdicts of life imprisonment on three of the counts and verdicts of death for the murders of Ruby and Stella, finding the aggravating factor of "vileness." On direct appeal, the Supreme Court of Virginia affirmed Gray's convictions and death sentences.

## B.

Gray then sought state habeas relief in the Supreme Court of Virginia.[1] Relevant here, Claim III of that petition alleges that Gray's trial counsel failed to make a reasonable investigation of his confession. According to Gray, he repeatedly asked police officers for an attorney and a phone call, but was denied both. Gray also asserts that he told the police that his drug use on the day of the crime, especially his use of PCP, left him unable to remember the day's events. To fill the gaps in his memory, Gray says, police officers showed him statements made by his accomplice Dandridge, and he adopted Dandridge's account as his own. Had Gray's trial attorneys sufficiently investigated these allegations, Gray contends, they could have had the confession suppressed or, at least, sowed

---

[1] Virginia requires habeas petitioners subject to the death penalty to apply directly to the state supreme court. Va. Code Ann. § 8.01-654(C)(1).

doubt in the jury's mind as to the extent of Gray's participation in the murders. The warden moved to dismiss, attaching a joint affidavit from Gray's trial attorneys.

The Supreme Court of Virginia dismissed Gray's habeas claims, save one not relevant here. In dismissing Claim III, the court held that Gray had shown neither that his trial counsel performed unreasonably, nor that he suffered prejudice from deficient performance, the two requirements under Strickland v. Washington, 466 U.S. 668, 687 (1984). The court supported its holding with the following findings of fact, relying heavily on the affidavit of Gray's trial attorneys:

> The record, including the affidavit of counsel, demonstrates that petitioner insisted to counsel that he knew what he was doing when he committed the murders and that "PCP could not be to blame." Furthermore, counsel spoke to every officer involved in petitioner's arrest, including Detective Peterman, and determined that petitioner was not provided any details from Dandridge's statement before or during his statement to the police. The affidavit of counsel also demonstrates that petitioner never informed counsel that Detective Peterman had "fed" him the details of the crimes or of Dandridge's statements to police and that counsel looked for but could not find any evidence that would have supported a motion to suppress petitioner's statements to police.

Gray v. Warden of Sussex I State Prison, 707 S.E.2d 275, 284 (Va. 2011).

6

C.

Gray next filed a federal habeas petition, arguing with respect to Claim III[2] that the Supreme Court of Virginia's dismissal of the claim was based on an unreasonable determination of the facts under AEDPA's § 2254(d)(2). The district court determined that, although the state court made credibility determinations and weighed the parties' affidavits without an evidentiary hearing, "Section 2254(d) affords wide latitude to state courts in fashioning state habeas procedures and . . . the procedures adopted by the state court were not, within the context of this case, inherently unreasonable or unreliable." Gray v. Pearson, No. 1:11-cv-630, 2012 WL 1481506, at *12 (E.D. Va. Apr. 27, 2012). Considering "the totality of the state court record," the district court concluded that "the

_____

[2] Gray's original habeas petition includes ten claims. The first alleges that prosecutors (a) failed to disclose exculpatory evidence regarding Dandridge's culpability and (b) made false statements about Gray's confession. The remaining claims allege ineffective assistance for failure to: present evidence of relative culpability between Gray and Dandridge (Claim II); make a reasonable investigation of Gray's statements to police (Claim III); protect Gray's double jeopardy right (Claim IV); protect Gray's right to plead guilty and have sentencing factors determined in a constitutional manner (Claim V); object to the prosecutor's comment on Gray's failure to testify (Claim VI); ensure jurors were properly instructed (Claim VII); move for a mistrial based on juror misconduct and object to Gray's exclusion from a hearing on the issue (Claim VIII); and present sufficient mitigating evidence at sentencing (Claim IX). Claim X alleges ineffective assistance based on the cumulative effect of Claims II-IX.

state court's determinations of fact were not unreasonable."
Id.

D.

After Gray filed his federal habeas petition, but before the district court had ruled on it, the Supreme Court decided Martinez v. Ryan. Martinez provides a narrow exception to the general rule, stated in Coleman v. Thompson, 501 U.S. 722, 752–53 (1991), that errors committed by state habeas counsel do not provide cause to excuse a procedural default. The Supreme Court summarized its holding as follows:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Martinez, 132 S. Ct. at 1320.

Three aspects of the decision are notable here. First, Martinez permits a petitioner to excuse certain procedurally defaulted ineffective-assistance-of-trial-counsel claims. But if claims are not procedurally defaulted—that is, they were properly presented to the state court—then Martinez does not apply. See Escamilla v. Stephens, 749 F.3d 380, 394 (5th Cir. 2014) (holding that "Martinez does not apply to claims that were fully adjudicated on the merits by the state habeas court

8

because those claims are, by definition, not procedurally defaulted"). Second, because a petitioner raising a Martinez claim never presented the claim in state court, a federal court considers it de novo, rather than under AEDPA's deferential standard of review. See § 2254(d) (providing review standards for "any claim that was adjudicated on the merits in State court proceedings"). Finally, a Martinez claim requires a showing that state habeas counsel was ineffective.

Because Gray's state habeas attorneys also represented him in the federal proceedings, a conflict of interest arose regarding counsel's ability to identify and argue potential Martinez claims. Gray therefore moved for appointment of new counsel. The district court denied the motion.

The district court also denied Gray's habeas petition in full. Gray, 2012 WL 1481506, at *20. The district court then certified two questions to this court: first, whether the state habeas court's dismissal of Claim III was based on an unreasonable determination of the facts; and second, whether Martinez entitled Gray to the appointment of independent counsel. We reserved the first question and answered the second in the affirmative, directing the district court to appoint independent counsel to explore the existence of Martinez claims. Gray v. Pearson, 526 F. App'x 331, 335 (4th Cir. 2013).

After the district court appointed new counsel and granted Gray's motions to appoint new experts and an investigator, Gray filed an amended petition. He presented four claims, all based on Martinez, only one of which, Claim XI, is relevant here.[3] In this claim, Gray asserts that his trial attorneys were ineffective in failing to present evidence of Gray's voluntary intoxication at the time of the crimes and that his state habeas attorneys were ineffective for not raising the claim in the Supreme Court of Virginia.

The district court treated Claim XI as two distinct ineffective-assistance claims, one regarding the guilt phase, and one regarding the penalty phase. Gray v. Davis, No. 1:11-cv-630 (AJT/TCB), 2014 WL 2002132, at *4 (E.D. Va. May 13, 2014). As to the guilt-phase claim, the district court dismissed it for failing to meet certain requirements stated in Martinez.[4] As to the penalty-phase claim, the district court

---

[3] The amended petition incorporates the original petition by reference, accepting that the original ten claims had already been dismissed by the district court. Accordingly, the claim numbering in the amended petition begins at XI. The other three Martinez claims, which are not before us, allege that Gray's constitutional rights were violated by a juror's consideration of extrinsic evidence (Claim XII), that trial counsel failed to conduct an adequate mitigation investigation (Claim XIII), and that the cumulative errors of trial counsel constituted ineffective assistance (Claim XIV).

[4] The district court found two faults with the claim under Martinez. First, Gray could not make a substantial showing that (Continued)

10

found that Gray's state habeas counsel had raised it in the state court. Id. at *11. As a result, the claim was not procedurally defaulted, and Martinez did not apply. See id. And even if the penalty-phase claim had been procedurally defaulted, the district court held, it likewise failed to meet the other Martinez requirements. Id.

The district court denied the amended petition, but issued a certificate of appealability with respect to the penalty-phase claim only.[5] This appeal followed.

II.

Two issues are before us on appeal. The first is the reserved claim from Gray's prior appeal to this court: whether the Supreme Court of Virginia's dismissal of Claim III—ineffective assistance of trial counsel in failing to investigate Gray's confession—was "based on an unreasonable

---

trial counsel performed deficiently, or, assuming they had, that Gray was prejudiced as a result. Gray, 2014 WL 2002132, at *5-13. Second, Gray failed to make a substantial showing that his state habeas counsel were ineffective by not raising the trial-counsel claim. Id. at *13-14. Assuming without deciding that state habeas counsel's performance was deficient, the district court held that Gray could not show prejudice. Id.

[5] Although Gray moved to expand the certificate of appealability to include a juror misconduct claim and a separate ineffective-assistance claim, he did not move to include the guilt-phase claim. We denied the motion.

11

determination of the facts" under AEDPA's § 2254(d)(2) because the court resolved disputed issues of fact without an evidentiary hearing. The second issue is whether, under Martinez, Gray may belatedly raise in the district court an ineffective-assistance-of-trial-counsel claim—namely, that trial counsel failed during the penalty phase to present evidence of Gray's voluntary intoxication at the time of the crimes. We consider each issue in turn, reviewing de novo the district court's denial of a petition for a writ of habeas corpus. Muhammad v. Kelly, 575 F.3d 359, 367 (4th Cir. 2009).

## A.

We first consider Gray's argument under § 2254(d)(2) that the Supreme Court of Virginia's decision to deny Gray's ineffective-assistance-of-trial-counsel claim warrants no deference from the federal courts. According to Gray, the state court made an "unreasonable determination of the facts" by ignoring his evidence and by resolving factual disputes without an evidentiary hearing. We find neither contention persuasive.

AEDPA permits a federal habeas court to review claims decided on the merits by state courts when the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts is not

12

merely an incorrect determination, but one "sufficiently against the weight of the evidence that it is objectively unreasonable." Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010).

1.

Gray first argues that the Supreme Court of Virginia's fact determination was unreasonable because the court ignored his evidence. He is concerned primarily with the affidavit of defense investigator Melvin Knight, who interviewed Gray and who also interviewed some of the police officers involved in Gray's arrest and interrogation. In the affidavit, Knight relates statements that Gray made about the circumstances surrounding his confession, including (1) that Gray had asked police for an attorney, (2) that Gray had told police he was fuzzy on the details of the crimes because of drug use at the time of the crimes, and (3) that the police had "fed" him details of the crimes from his accomplice Dandridge. The record, however, does not support Gray's assertion that the Supreme Court of Virginia ignored his evidence.

When a state court apparently ignores a petitioner's properly presented evidence, its fact-finding process may lead to unreasonable determinations of fact under § 2254(d)(2). Moore v. Hardee, 723 F.3d 488, 499 (4th Cir. 2013) (citing Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004)); see also Miller-El v. Cockrell, 537 U.S. 322, 346 (2003) (expressing

13

concern that a state court "had before it, and apparently ignored" petitioner's probative evidence of a constitutional violation). In Taylor, for example, the Ninth Circuit found factual determinations unreasonable when the state court ignored a "highly probative" affidavit corroborating the petitioner's claim that his confession had been coerced and he had been denied an attorney. 366 F.3d at 1006 (noting that "[a] rational fact-finder might discount [the affidavit] or, conceivably, find it incredible, but no rational fact-finder would simply ignore it").

But as we said in Moore, a state court need not refer specifically to each piece of a petitioner's evidence to avoid the accusation that it unreasonably ignored the evidence. See 723 F.3d at 499; cf. Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000) (en banc) (holding that "we may not 'presume that [the] summary order is indicative of a cursory or haphazard review of [the] petitioner's claims'" (alteration in original) (quoting Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998))). Rather, to determine whether the state court considered or ignored particular evidence, the federal court must review "the entirety of the [state] court's order." Moore, 723 F.3d at 499.

In Moore, the petitioner argued before the state court that his trial counsel was ineffective in failing to call an expert on the inaccuracy of eyewitness memory. Id. at 492. In support

14

of the claim, the petitioner filed an affidavit from such an expert explaining what evidence trial counsel could have presented. Id. at 492–93. The state court denied the claim, finding that trial counsel had "fully presented" evidence relating to petitioner's eyewitness identification. Id. at 493. The state court listed each piece of the petitioner's evidence except the expert's affidavit and then said that the petitioner did "not suggest that there is any more evidence regarding the identification." Id. The district court, taking this assertion to mean that the state court had ignored the affidavit, found the determination of fact unreasonable. Id. at 499.

We reversed, noting that the state court, immediately after concluding that the petitioner had not offered "any more evidence," went on to say that "there was no showing to justify or require an expert on identification." Id. This statement, we said, demonstrated that the state court considered the petitioner's submission and reached a conclusion as to which "'[fair-minded] jurists could disagree.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).

As in Moore, the record here demonstrates that the Supreme Court of Virginia did not ignore Gray's evidence. Rather, the court simply determined that Gray's evidence was not credible. We base our conclusion in part on the court's denial of a motion to strike the Knight affidavit. The warden moved to strike the

15

affidavit as inadmissible hearsay. The parties ultimately traded five briefs on the issue, and, in its decision denying Gray's petition, the Supreme Court of Virginia denied the motion to strike. Gray, 707 S.E.2d at 290. The denial of the motion after substantial briefing indicates that the state court considered the affidavit.

Our conclusion is strengthened by the minimal probative value of the Knight affidavit. Whereas in Taylor the state court's failure to discuss petitioner's "highly probative" evidence was inexplicable, here the explanation is simple: the Supreme Court of Virginia could reasonably have determined that the Knight affidavit did not warrant discussion. See Taylor, 366 F.3d at 1001 ("To fatally undermine the state fact-finding process, and render the resulting finding unreasonable, the overlooked or ignored evidence must be highly probative and central to petitioner's claim."). Because fair-minded jurists could disagree on the correctness of this conclusion, Gray is not entitled to relief on this aspect of his claim. See Moore, 723 F.3d at 499.

2.

Next, Gray argues that the Supreme Court of Virginia's determinations of fact were necessarily unreasonable because the court failed to hold an evidentiary hearing. Gray stops short of arguing that evidentiary hearings are always required,

16

claiming instead that one was necessary here because of the strength of his pleadings and supporting evidence. The district court held that the lack of a hearing did not itself render the determination of facts unreasonable, and its own review of the record likewise confirmed that the determination was not unreasonable. Gray, 2012 WL 1481506, at *12.

A state habeas court need not hold an evidentiary hearing in every case to make reasonable fact determinations. Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007). In Strong, the petitioner alleged ineffective assistance of counsel, claiming he had asked his attorney to file an appeal, but the attorney failed to do so despite assurances he would. Id. at 140. The state filed a motion to dismiss, attaching the attorney's sworn letter attesting he had met with the petitioner twice to discuss the appeal and the petitioner had ultimately agreed no appeal would be filed. Id. Without holding an evidentiary hearing, the state court granted the motion to dismiss, essentially adopting the attorney's version of events and rejecting the petitioner's:

> The record, including the affidavit of counsel, demonstrates that petitioner initially instructed counsel to appeal his convictions and counsel advised petitioner that he had no grounds upon which to appeal. Petitioner told counsel he understood and agreed that an appeal would serve no purpose. . . . Petitioner has failed to establish that he objectively demonstrated his intent to appeal his conviction.

17

Id. at 137–38.

We held that the state court's determination of disputed facts without a hearing was not unreasonable. Strong, 495 F.3d at 140. "[T]here is no prohibition," we explained, "against a court making credibility determinations based on competing affidavits in certain circumstances," including "when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events." Id. at 139.

As we explain below, because Gray's allegations are similarly conclusory and the record presents "a detailed account of events" contradicting the allegations, the Supreme Court of Virginia permissibly resolved disputed facts without an evidentiary hearing.

a.

In support of his ineffective-assistance claim in the Supreme Court of Virginia, Gray presented evidence in the form of (1) the Knight affidavit, (2) an account of Gray's confession given by Detective Peterman during a hearing held more than a year after the trial, and (3) his own allegations in the

petition.[6] The warden supported its motion to dismiss with an affidavit from Gray's trial attorneys.

As to his allegation that he requested an attorney and a phone call, Gray's sole evidence is Knight's retelling of Gray's own account: "Mr. Gray told me that during his January 7, 2006, interrogation by police in Philadelphia, he repeatedly asked for an attorney and a phone call." J.A. 382; see id. at 118. This bare, self-serving allegation, however, is strongly contradicted by the record.

Although Detective Peterman was not specifically asked at trial whether Gray requested an attorney or a phone call, his detailed and coherent account of the confession rebuts Gray's allegation. Peterman described an interaction marked by cooperation rather than resistance. See id. at 19-21 (Peterman testifying that he told Gray he knew "the truth according to Ray Dandridge," and Gray responded, "Can I tell you my side of the story?"). Moreover, he described Gray as initiating the discussion.

We also know from Gray's signed waiver of counsel that, at least in the moments before taking Gray's confession, Peterman

---

[6] While Gray also attempted to rely on the affidavit of defense mitigation investigator Judith McClendon, the Supreme Court of Virginia struck that affidavit on the warden's motion, Gray, 707 S.E.2d at 290, and Gray offers no challenge to that decision, see Appellant's Br. 28-29.

19

informed Gray of his right to counsel. See J.A. 38–39 (Gray answering "no" to the question, "Do you want to talk to a lawyer at any time or have a lawyer with you while we ask you questions?"). If Peterman's story were false, one would expect Gray to provide a competing account or, at the very least, explain his apparently valid waiver of counsel. But Gray has failed to do either.

In addition to the evidence at trial, Gray's attorneys say that they investigated the confession. According to their joint affidavit, they "travelled to Philadelphia, Pennsylvania, and spoke directly to all the officers that had dealt with Gray, including everyone in the 'chain of custody' of his arrest." Id. at 700. Although the attorneys "were actively looking for suppression issues," they "could not find grounds for even a colorable claim to suppress any of the statements Gray made to law enforcement." Id. at 701. Gray's attorneys do not state specifically whether they investigated Gray's allegation that he requested an attorney, or even whether they knew of it. But they do indicate that their interviews with the officers involved in Gray's confession did not uncover evidence that Gray was denied counsel he had requested.

Based on our review of the record, we cannot say that the Supreme Court of Virginia was objectively unreasonable in discounting Gray's allegation that he was denied counsel and a

20

phone call. The assertion is bare and belated, and the record evidence contradicting it is detailed.

We reach the same conclusion as to Gray's allegation that he could not remember the details of the crimes and was fed his confession by police. In his state petition, Gray asserts "that he told police that he didn't remember many details because he was high on a combination of marijuana, ecstasy and PCP when the crimes were committed." Id. at 118. He then describes how the police fed him his confession:

> [D]etectives went back and forth between his room and the room in which they were interrogating Dandridge and showed him Dandridge's signed statement with full disclosure and complete details about each of the murder scenes, read him the statement, and, although Gray was not clear on the details, used Dandridge's statement to fashion a statement purportedly from Gray.

Id. Knight independently confirmed with Peterman that Gray had told the detective "that his memory of the details of the crimes was fuzzy." Id. at 384.[7]

Gray's allegation of being fed details is hardly detailed, and unanswered questions make it difficult to credit. Which details of Gray's confession came from Dandridge? Why did Gray accept them when he could not remember what had happened? And

---

[7] Gray also relies on statements made by Detective Peterman in a hearing on an unrelated matter, as discussed in detail below.

21

why, if he was simply accepting the confession as the police provided it, did he bother to amend his statement, apparently to remove evidence of premeditation?  See Suppl. J.A. 44 ("Q.  What happened after you talked [the Harvey family] downstairs [i.e., into the basement]?   A.  ~~We was playing like everything was gonna be all right.~~  Everything was all right.").

As further support for his allegation, Gray points to Detective Peterman's testimony given more than a year after Gray's trial in a hearing on a separate criminal matter.  There, Peterman states that before he recorded the confession as a formal question-and-answer dialogue, he first asked what Gray knew about the crime.  Gray argues that this statement proves that Peterman had the opportunity during preliminary discussions with Gray to learn of the gaps in Gray's memory and fill them in with details from Dandridge's account.  Peterman, however, did not give the slightest hint of having coached Gray on his answers.  See J.A. 396 ("[Gray's attorney to Peterman]: And is it fair to say that the way you would approach it is you would talk to him about a specific incident before committing anything to writing?  [Peterman]: Would I give him information about it? I would tell Rick what I wanted to know about the incident that I was questioning him about, and if he had any information about it that he wanted to share with me.").

22

Gray also contends that this new testimony proves that Peterman lied at trial about the confession. At trial, Peterman described in general terms sitting down with Gray and obtaining Gray's waivers of his Fifth and Sixth Amendment rights. The prosecutor then asked Peterman a series of questions about Gray's demeanor during the confession and established that the confession had been recorded only in writing. Next, the prosecutor asked, "Detective Peterman, is there any aspect of your interview with Mr. Gray that we haven't gone over that leads up to the actual substance of the interview?" Id. at 23. "No," Peterman responded. Id. at 24. The prosecutor continued: "Now, am I correct that you asked him a series of questions and he provided a series of answers to you?" Id. Peterman replied, "That's correct." Id. The prosecutor then had Peterman read the recorded questions and answers to the jury.

Gray posits that this exchange shows Peterman attempted to conceal off-the-record discussions with Gray. We find this interpretation unconvincing. Peterman never denied having an informal preliminary discussion, nor did his responses at trial foreclose the possibility.

Critically, when Peterman was asked at trial whether he "at any point assist[ed] Mr. Gray in his recollection of what happened," including "tell[ing] [him] anything that Mr. Dandridge had told" Peterman, the detective replied, "No." Id.

23

at 30. In Peterman's account, Gray prompted the conversation about the crimes after learning that Peterman had already spoken with Dandridge. Having acknowledged his constitutional rights, including his right to counsel, Gray answered Peterman's questions about the crimes. Gray reviewed the statement as Peterman had recorded it and certified that it was correct and accurate. And according to the Knight affidavit, Peterman gave a similar account of the confession prior to trial. See id. at 384 (noting that Peterman "denied that a 'dry run' interview preceded the written verbatim statement").

Trial counsel's joint affidavit corroborates Peterman's account of the confession:

> There was no evidence that the police fed Gray any facts from Dandridge's statements when they interviewed Gray. The information we obtained about the interview procedures all was consistent with the trial testimony: Gray asked, during a bathroom break, if the police had spoken to Dandridge; the detective said yes; Gray asked what Dandridge said; the answer was "everything" or some similar general comment; and Gray then proceeded to give his statement.

Id. at 701.

Trial counsel also stated that "Gray did not tell us that he had been fed details of the crimes." Id. According to the Knight affidavit, however, Gray told Knight precisely that. The Supreme Court of Virginia, without referring to the Knight affidavit, found that "[t]he affidavit of counsel . . . demonstrates that petitioner never informed counsel that

24

Detective Peterman had 'fed' him the details of the crimes or of Dandridge's statements to police." Gray, 707 S.E.2d at 284. While we find this troubling to the extent it suggests the state court preferred the attorneys' affidavit to Knight's, we nevertheless cannot say that the state court's decision was based on "an unreasonable determination of the facts." § 2254(d)(2). Even if the attorneys knew about Gray's allegations, the evidence we have described supported the Supreme Court of Virginia's determination that Gray's allegations were not credible.

Finally, Gray's trial attorneys contradict his claim that drug use clouded his memory of the crime: "Gray insisted repeatedly that PCP could not be to blame. He insisted that he knew what he was doing." J.A. 706; see also id. 720 (doctor conducting competency evaluation noting that Gray "insisted he was never so intoxicated that he felt it destroyed his ability to understand what was happening"); id. 726 (doctor conducting evaluation of Gray's mental condition at the time of the crime, noting that Gray "denied that as a result of his drug use . . . he was unaware of his actions at the time of the present offenses").

In the face of all this, we cannot say that the state court's decision to reject Gray's ineffective-assistance claim

without holding a hearing resulted in unreasonable determinations of fact.  See § 2254(d)(2).

b.

To persuade us otherwise, Gray cites a number of cases in which the United States Supreme Court has required a state court to hold an evidentiary hearing.  But while these cases support the general proposition that due process sometimes requires a hearing, they do not establish that one was required here.

Gray's reliance on Panetti v. Quarterman, 551 U.S. 930 (2007), is particularly misplaced.  Whereas Panetti addresses the unreasonable application of federal law under § 2254(d)(1), Gray is fundamentally attacking the way the state court determined facts, not the way it applied a particular Supreme Court precedent.[8]  In Panetti, the district court failed to hold an incompetency hearing as required under Supreme Court precedent.  Id. at 948.  Unlike the petitioner in Panetti, Gray has not identified a Supreme Court case that entitles him to a hearing.  Strickland, the basis for Gray's claim, certainly provides no such entitlement.  See 466 U.S. at 700 ("The state

_____

[8] Although Gray occasionally couches his arguments in terms of an "unreasonable application" of federal law under § 2254(d)(1), we find that his arguments are better addressed under § 2254(d)(2).  See Winston, 592 F.3d at 553 (noting that "§ 2254(d)(2) describes the standard to be applied to claims challenging how the state courts determined the facts").

26

courts properly concluded that the ineffectiveness claim was meritless without holding an evidentiary hearing.").

Nor was Gray's claim given the kind of short-shrift treatment that the Supreme Court rejected in Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116 (1956), and Palmer v. Ashe, 342 U.S. 134 (1951). In Claudy, the petitioner alleged that his confession and guilty plea had been coerced by threats to himself and his family, and that he was denied the benefit of counsel. 350 U.S. at 117. The state denied the allegations and, without holding a hearing, the state court summarily dismissed. Id. at 117-18. According to the Supreme Court, summary dismissal of the petitioner's claims "merely because the allegations of his petition were contradicted by the prosecuting officers" was unreasonable. Id. at 123. Here, by contrast, the Supreme Court of Virginia had not only the officers' word against Gray's, but also contradictory statements from Gray and the affidavit of Gray's trial attorneys.

Similarly, in Palmer, the Court required a state court to provide a hearing to determine whether the petitioner should have been afforded counsel where he alleged he was intellectually disabled and police had tricked him into pleading guilty to armed robbery when he thought he was pleading to the less serious crime of breaking and entering. 342 U.S. at 136-38. A hearing was necessary because the "record does not even

27

inferentially deny petitioner's charge that the officers deceived him, nor does the record show an understanding plea of guilty from this petitioner, unless by a resort to speculation and surmise." Id. at 137. Here, again, Gray's case is quite different—the record provides strong evidence that Gray's claims are not credible.[9]

Finally, Gray directs our attention to Brumfield v. Cain, 135 S. Ct. 2269 (2015). There, the state court denied petitioner an evidentiary hearing in which to prove that he was intellectually disabled under Atkins v. Virginia, 536 U.S. 304 (2002). Brumfield, 135 S. Ct. at 2274–75. In finding some of the state court's fact determinations unreasonable, the Supreme Court took into account what evidentiary standard would entitle the petitioner to a hearing: "Brumfield needed only to raise a 'reasonable doubt' as to his intellectual disability." Id. at 2281. Because this standard imposed a low burden of proof on Brumfield, the Court concluded that he met the "reasonable doubt" standard even though "other evidence in the record before

---

[9] Nor is McNeal v. Culver, 365 U.S. 109 (1961), helpful to Gray. As in Claudy and Palmer, the petitioner's allegations of a constitutional violation in McNeal were not significantly called into question by the record. Id. at 117 ("On the present record it is not possible to determine [the allegations'] truth.").

28

the state court may have cut against Brumfield's claim of intellectual disability." Id. at 2280.

Gray contends that, as in Brumfield, the Supreme Court of Virginia's findings of fact are unreasonable under the applicable evidentiary standard: "[T]he state court in Gray's case failed to recognize that Gray's evidence, viewed in the light most favorable to him, should defeat the Warden's motion to dismiss." Appellant's Letter Br. 2. To the extent Gray implies that the state court was not permitted to discount his evidence where it was contradicted by the record, his argument is in tension with Strong. 495 F.3d at 139 (noting "there is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances"). And nothing in Brumfield casts doubt on our precedent.

In sum, because Gray's claim of ineffective assistance of counsel is based on his own "conclusory" allegations, and because the record provides sufficient evidence to contradict them, we hold that, as in Strong, the state court's determination of the facts was not objectively unreasonable even without an evidentiary hearing.

B.

We next consider Gray's contention that he is entitled to raise in the district court a claim of ineffective assistance of trial counsel under Martinez v. Ryan. As we have explained,

29

*Martinez* permits a petitioner, under certain circumstances, to excuse a procedural default and bring a claim in federal court that was not raised in state court. Such a claim, never having been heard by a state court, is reviewed de novo. As a result, the usual roles of the habeas petitioner and the government are reversed here. Gray, seeking de novo review, argues that his ineffective-assistance-of-trial-counsel claim was procedurally defaulted—an outcome that would normally bar the claim. The warden, seeking to deny Gray the benefit of *Martinez*, argues that Gray properly presented the claim to the Supreme Court of Virginia.

The district court sided with the warden, holding that the trial-counsel claim was not procedurally defaulted and therefore *Martinez* did not apply. See *Gray*, 2014 WL 2002132, at *11. The district court compared the "new" claim with claims already presented to the Supreme Court of Virginia, concluding that "Gray's [new] Claim XI differs from his previously asserted Claim IX only in that it is framed exclusively within the context of a voluntary intoxication defense and the effect such a presentation would have likely had on a jury who found a death sentence." *Id.*

As we explain below, we agree with the district court that the claim was properly presented to the Supreme Court of Virginia and thus not procedurally defaulted. The claim

30

therefore cannot be reviewed de novo under Martinez. As a result, we do not consider the district court's alternate holdings that, under Martinez, the claim is not "substantial" and Gray's state habeas counsel was not ineffective in failing to raise it. See id. at *5–14.

### 1.

Before seeking federal habeas review of a claim, a petitioner ordinarily must raise that claim in the state court, complying with state procedural rules and exhausting available state remedies. See Coleman, 501 U.S. at 750. When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted and federal review is generally foreclosed. Id. at 729. To overcome a procedural default, a petitioner must demonstrate either (1) cause and resulting prejudice, or (2) that the failure to review the claim "will result in a fundamental miscarriage of justice." Id. at 750.

Likewise, when a habeas petitioner fails to exhaust state remedies for a claim, federal review is not available until the petitioner either returns to state court with the claim or demonstrates that such an attempt would be futile, in which case the claim is treated as procedurally defaulted. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). The purpose of these requirements, in keeping with the principles of comity and

31

federalism, is to give the state courts an opportunity to consider a defendant's claims and to correct constitutional violations. See Rose v. Lundy, 455 U.S. 509, 518–19 (1982). To exhaust a claim, the petitioner must present the state court with "both the operative facts and the controlling legal principles." Winston, 592 F.3d at 549.

But if a claim is exhausted in state court and not procedurally defaulted, then it was adjudicated on the merits and is subject to review under the deferential standards set forth in AEDPA's § 2254(d). See Richter, 562 U.S. at 99.

2.

Gray cannot raise his Martinez claim unless it was procedurally defaulted, and that question in turn depends on whether Gray exhausted the claim in the Supreme Court of Virginia. Unlike in Martinez, where the state court barred the petitioner's claim on procedural grounds, here Gray argues that he is presenting "a new, unexhausted claim" that would be futile to take back to the Virginia courts. Appellant's Suppl. Br. 43.

We hold that Gray properly exhausted his ineffective-assistance-of-trial-counsel claim in his state habeas proceedings. Most notably, in Claim IX of his state petition, titled "Gray's Trial Counsel Was Ineffective At Sentencing," Gray argued that Dr. Cunningham, a clinical and forensic psychologist, "could have provided expert testimony on Gray's

32

use of PCP and other drugs <u>at the time of the offense</u> to show how studies link such use in individuals such as Gray to violent behavior and moral responsibility." J.A. 153 (emphasis added) (citation omitted). This statement made explicit what was implicit elsewhere in the state habeas petition: Gray believed that his trial counsel, during the sentencing proceeding, failed to put before the jury adequate evidence of his voluntary intoxication at the time of the crimes. See <u>id.</u> at 146 (faulting trial counsel for failing to provide "expert testimony to explain what precipitated the drug use and the impact of the drug use on the defendant's moral culpability and behavior"); <u>id.</u> at 146–47 ("The presentation of drug use without expert testimony was ineffective assistance."); <u>id.</u> at 147–48 (arguing that Dr. Lisak could have explained to the jury that "drugs became the central focus of [Gray's] life and the primary motivator of much of his behavior, including criminal behavior").

We conclude that Gray exhausted the claim because a "reasonable fact-finder . . . could have found the facts necessary to support the petitioner's claim from the evidence presented to the state courts." <u>Winston</u>, 592 F.3d at 551. The claim was therefore not procedurally defaulted.

3.

Gray insists that the claim is not exhausted because his newly proffered evidence in the district court "fundamentally alters the nature of any claim that may have been before the state court." Suppl. Reply Br. at 2. But a properly exhausted state claim is not necessarily altered by the submission of new evidence on federal habeas review. Winston, 592 F.3d at 549. Gray relies on Wise v. Warden, in which we held that the petitioner's introduction of previously undisclosed "critical evidence" in his federal habeas petition rendered the claim unexhausted. 839 F.2d 1030, 1034 (4th Cir. 1988). However, as we later explained in Winston, Wise stands for the proposition that a petitioner may not support a claim in state court with "mere conjecture" and subsequently provide the necessary evidentiary support for the claim on federal habeas review. Winston, 592 F.3d at 551 (explaining that Wise "distinguish[ed] a claim without evidentiary support from one with evidentiary support").

Here, Gray's new evidence, including affidavits from a clinical psychologist and a neuropharmacologist, has perhaps strengthened the claim, but it has not "fundamentally altered" it. The heart of the claim remains the same: his trial attorneys should have done more to show how Gray's intoxication at the time of the crimes lessened his culpability. Moreover,

34

while Gray's new expert affidavits provide a great deal of information about the cumulative effects of PCP, their conclusions necessarily remain speculative without specific evidence of how intoxicated Gray was at the time of the crimes. See, e.g., Suppl. J.A. 244 ("Had I been able to test Mr. Gray close to the time of the crime, the results would likely have shown very clear impairment."); id. at 251 ("Mr. Gray's memory was inadequate for me to determine with precision his state of mind and symptoms during the commission of these crimes. The amnesia itself is consistent with his report of PCP use."); id. at 252 ("It is abundantly clear that around the time of the crimes . . . he was using [PCP] . . . along with other drugs, including marijuana and alcohol."). So while the addition of the expert affidavits certainly places greater emphasis on the issue of Gray's intoxication, the new evidence has not "fundamentally altered" the claim.

In sum, because Gray exhausted his claim in the state court, it was not procedurally defaulted. As a result, the district court properly dismissed Gray's Martinez claim.[10]

---

[10] Because we find the Martinez claim may not be reviewed de novo in the district court, we do not address Gray's argument that the district court was required to hold an evidentiary hearing on it.

## III.

For the reasons given, we affirm the district court's dismissal of Gray's petition.

AFFIRMED

DAVIS, Senior Circuit Judge, concurring in part and dissenting in part:

I agree with my friends in the majority that Ricky Jovan Gray exhausted his claim that trial counsel were constitutionally ineffective in failing to present evidence during the penalty phase of his trial that he was voluntarily intoxicated during the commission of the crimes. Furthermore, because a "reasonable fact-finder . . . could have found the facts necessary to support [Gray's] claim from the evidence presented to the state court[]," Winston v. Kelly, 592 F.3d 535, 551 (4th Cir. 2010), I agree with the majority that the district court properly dismissed Gray's Martinez claim. But I disagree, respectfully, with the majority's determination that the Supreme Court of Virginia's resolution of disputed issues of fact, based on conflicting and partially unaddressed sworn affidavits, without an evidentiary hearing, did not amount to an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). I therefore concur in part and dissent in part.

In his habeas petition to the Supreme Court of Virginia, Gray presented several claims of ineffective assistance of counsel. He grounded one such claim in his trial counsel's alleged failure to undertake a reasonable investigation into the circumstances surrounding his confession. Gray alleged that, during the course of his January 7, 2006 police interrogation,

37

he had repeatedly requested an attorney and a phone call, but the police denied both requests, continued the interrogation, and ultimately obtained his written confession. Gray also asserted that he had told the police that he could not remember many details of the crimes because of his drug use during the day in question. Gray claimed that the police had responded by showing him the statement of one of his accomplices, Ray Dandridge, and by helping Gray fashion his own confession in reliance on many of the details included in Dandridge's statement.

Importantly, Gray alleged in his habeas petition that he had expressly informed his trial counsel of the details surrounding his interrogation and confession during a February 10, 2006 meeting. Even though Gray had relayed this information, his trial counsel allegedly failed to conduct a reasonable investigation into these matters. Had his trial counsel adequately investigated the circumstances surrounding Gray's interrogation and confession, Gray asserted, his trial counsel could have moved to suppress his confession or used the results of the investigation to impeach the testimony of Detective Howard Peterman during trial.*

---

* Detective Peterman, of the Philadelphia Police Department, testified at length at trial about the circumstances that led to his questioning of Gray and the substance of Gray's written
(Continued)

38

Gray supported his ineffective assistance of counsel claim and his recollection of the January 7, 2006 police interrogation and confession with the affidavit of Melvin B. Knight. Knight was an investigator with the Office of the Capital Defender of the Central Region of Virginia and was tasked with assisting Gray's trial counsel in preparing Gray's defense. Prior to his employment with the Office of the Capital Defender, Knight was a law enforcement officer with the City of Richmond Police Department for more than twenty-five years.

In his affidavit, Knight recounted his February 10, 2006 interview with Gray and explained that Gray had expressly stated that he had asked for an attorney and a phone call during his questioning by police. Knight also remembered Gray mentioning that he could not remember many details of the crimes because he had been high on a combination of marijuana, ecstasy, and PCP at the time the crimes were committed. Gray also indicated, according to Knight, that he had shared this information with the police. Gray then told Knight that, because he had been unable to remember many details of the crimes during his interrogation, the police had assisted Gray in crafting a

confession. Detective Peterman acknowledged that he informed Gray that Dandridge was also in custody at police headquarters, but Detective Peterman asserted that, after being made aware of his rights, Gray volunteered to tell his side of the story and did so without learning the details of Dandridge's confession.

39

written statement based upon the statement prepared by Dandridge. In short, a plausibly credible witness offered sworn facts more than trivially corroborative of Gray's allegations supporting a claim of ineffective assistance.

As the majority opinion recounts, the Warden filed a motion to dismiss Gray's habeas petition, specifically arguing that an evidentiary hearing was neither necessary nor permitted. In support of his motion to dismiss, the Warden submitted the affidavit of Gray's trial counsel, Jeffrey L. Everhart and Theodore D. Bruns. The attorneys asserted that Gray had never told them that he had been fed details of the crime. Further, the attorneys explained that they had interviewed each police officer who questioned Gray on January 7, 2006, including Detective Peterman, and each officer confirmed that Gray had confessed voluntarily and without acquiring information from Dandridge's confession. The attorneys also spoke of Gray's insistence that PCP was not to blame for his criminal actions and that he had known what he was doing. The attorneys, however, did not directly address Gray's assertion that his heavy drug use during the day in question left him unable to remember many of the crimes' details during his interrogation.

On March 4, 2011, the Supreme Court of Virginia granted the Warden's motion to dismiss the relevant ineffective assistance of counsel claim without affording Gray an evidentiary hearing.

40

<u>Gray v. Warden of Sussex I State Prison</u>, 707 S.E.2d 275 (Va. 2011). In ticking through Gray's several habeas claims, the Virginia Supreme Court explained that:

> The record, including the affidavit of counsel, demonstrates that petitioner insisted to counsel that he knew what he was doing when he committed the murders and that "PCP could not be to blame." Furthermore, counsel spoke to every officer involved in petitioner's arrest, including Detective Peterman, and determined that petitioner was not provided any details from Dandridge's statement before or during his statement to the police. The affidavit of counsel also demonstrates that petitioner never informed counsel that Detective Peterman had "fed" him the details of the crimes or of Dandridge's statements to police and that counsel looked for but could not find any evidence that would have supported a motion to suppress petitioner's statements to police.

> . . .

> The record, including the trial transcript, petitioner's statement to the police, and the affidavit of counsel, demonstrates that petitioner understood his constitutional rights and voluntarily agreed to speak to the police about the murders and that counsel looked for but could not find any evidence that would have supported a motion to suppress petitioner's statement to the police.

<u>Id.</u> at 283-84.

After the Supreme Court of Virginia dismissed his habeas petition, Gray sought federal habeas relief. He based his federal challenge in part on the Supreme Court of Virginia's decision to dismiss his ineffective assistance of counsel claim without affording him an evidentiary hearing and the opportunity to develop a factual record. Gray asserted that, because the

41

Supreme Court of Virginia presumably ignored the Knight affidavit and resolved related factual disputes regarding his ineffective assistance of counsel claim without the benefit of an evidentiary hearing, the dismissal amounted to an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

While it is a close question, I am constrained to agree with Gray. As the district court aptly observed, trial counsel's affidavit and Detective Peterman's trial testimony, "differed sharply" from Knight's affidavit and the details provided in Gray's verified petition. Gray v. Pearson, No. 1:11-cv-630, 2012 WL 1481506, at *11 (E.D. Va. Apr. 27, 2012). Despite this sharply conflicting evidence, the Supreme Court of Virginia effectively adopted the affidavit of Gray's trial counsel as fact absent any apparent analysis and without first providing Gray "any opportunity . . . to develop a factual record through discovery with compulsory process or to test disputed issues of fact through the type of adversarial process historically thought essential to the truth-finding function of a court." Id.

The district court and the majority correctly recognize that AEDPA's § 2254(d) restriction creates a "highly deferential standard for evaluating state-court rulings." Cullen v.

Pinholster, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011). However, the Supreme Court has implied that a state court's fact-finding may be unreasonable when the court "had before it, and apparently ignored," evidence supporting a petitioner's claim. See Miller-El v. Cockrell, 537 U.S. 322, 346 (2003). While the majority is content to assume that the Supreme Court of Virginia appropriately evaluated the Knight affidavit, which directly conflicted with the trial testimony of Detective Peterman and the affidavit of Gray's trial counsel, there is nothing in the opinion to suggest that the Supreme Court of Virginia considered Knight's affidavit, much less engaged in the difficult process of weighing the credibility of the affiants on a conflicting record.

The majority notes that it is troubled by the Supreme Court of Virginia's observable preference for trial counsel's affidavit as compared to the Court's treatment of Knight's and suggests that, despite not mentioning the Knight affidavit, the Supreme Court of Virginia assuredly took the affidavit into consideration because it ruled on the Warden's motion to strike the affidavit. The Court's ruling on the Warden's motion to strike the affidavit, however, comes in a singular and unsupported sentence at the conclusion of its opinion dismissing Gray's ineffective assistance of counsel claim, and the motion to strike the Knight affidavit was incorporated into a broader

43

motion to strike that concerned several of the affidavits proffered by Gray. While such context may be sufficient in certain circumstances to support the resolution of disputed issues of fact by a state court, based on conflicting sworn affidavits, without an evidentiary hearing, the facts presented in the Knight affidavit stood in direct conflict with those offered by trial counsel and the affidavit was at the heart of Gray's ineffective assistance of counsel claim. Accordingly, while I believe that "[a] rational fact-finder might discount [the affidavit] or, conceivably, find it incredible, . . . no rational fact-finder would simply ignore" the affidavit or fail to address it entirely. See Taylor v. Maddox, 366 F.3d 992, 1006 (9th Cir. 2004).

Because the Supreme Court of Virginia—in resolving disputed issues of fact, based on conflicting and partially unaddressed sworn affidavits, without an evidentiary hearing—made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2), I would vacate the judgment of the district court as to Gray's ineffective assistance of counsel claim and remand for an evidentiary hearing and the development of a full factual record.

Of course, my difference with the majority does not remotely reflect any view of trial counsel. With a few exceptions spread in reported cases, defense counsel in capital

44

cases perform conscientiously and in a manner entirely faithful to the noble ideals of the legal profession. Despite this truism, however, such counsel are not at all surprised or bothered by the fact that, given the stakes, their judgments and their trial performances will likely come under attack by fellow counsel in subsequent post-conviction proceedings. This may entail, as it should have in this case, subjecting such conscientious counsel to the unpleasantness of cross-examination. But our adversary system in cases involving the highest of stakes—life or death—should admit of nothing less.