593 S.E.2d 608

**The STATE, Respondent,**

v.

**Richard Bernard MOORE, Appellant.**

No. 25786.

Supreme Court of South Carolina.

Heard Jan. 7, 2004.

Decided March 1, 2004.

Deputy Chief Attorney Joseph L. Savitz, III, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy, Attorney General John W. McIntosh, Assistant Deputy, Attorney General Donald J. Zelenka, Senior Assistant, Attorney General William Edgar Salter, III, all of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for respondents.

Justice WALLER:

Appellant, Richard Benjamin Moore, was convicted of murder, armed robbery, assault with intent to kill, and possession of a firearm during commission of a violent crime; he was respectively sentenced to death, thirty years, ten years and five years. This appeal combines his direct appeal with this Court's mandatory sentencing review pursuant to S.C.Code Ann. § 16-3-25 (1985). We affirm the convictions and sentences.

## FACTS

The charges in this case stem from the September 16, 1999, armed robbery of Nikki's, a convenience store on Highway 221 in Spartanburg. According to Terry Hadden, an eyewitness, Moore walked into Nikki's at approximately 3:00a.m. and walked toward the cooler. Hadden was playing a video poker machine, which he did routinely after working his second shift job. Hadden heard Jamie Mahoney, the store clerk, yell, "What the hell do you think you're doing?" Hadden turned

from the poker machine to see Moore holding both of Mahoney's hands with one of his hands. Moore turned towards Hadden, pointed a gun at him, and told him not to move. Moore shot at Hadden, and Hadden fell to the floor and pretended to be dead. After several more shots were fired, Hadden heard the doorbell to the store ring. He heard Moore's pickup truck and saw him drive off on Highway 221. Hadden got up and saw Mahoney lying face down, with a gun about two inches from his hand; he then called 911. Mahoney died within minutes from a gunshot wound through his heart. A money bag with $1408.00 was stolen from the store.

Shortly after the incident, Deputy Bobby Rollins patrolled the vicinity looking for the perpetrator of the crime. Approximately one and one-half miles from the convenience store, Deputy Rollins took a right onto Hillside drive, where he heard a loud bang, the sound of Moore's truck backing into a telephone pole. He turned his lights and saw Moore sitting in the back of a pickup truck bleeding profusely from his left arm. As Deputy Rollins ordered him to the ground, Moore advised him, "I did it. I did it. I give up. I give up." A blood covered money bag was recovered from the front seat of Moore's pick-up truck. The murder weapon, a .45 caliber automatic pistol, was found on a nearby highway shortly before daylight.

Moore was tried for the crimes in October 2001. The jury convicted him of all counts. In a separate sentencing proceeding, the jury recommended a sentence of death.

### ISSUES

1. Did the trial court err in limiting the scope of Moore's closing argument to the guilt phase jury?

2. Did the trial court err in limiting the scope of Moore's closing argument to the sentencing phase jury?

### 1. GUILT PHASE CLOSING

Moore contends he should have been permitted to argue, to the guilt phase jury, that he was on trial for his life, and that his life was in jeopardy. We disagree.

Prior to the opening statements of counsel in this case, the trial court advised the jury that this was a death penalty trial which would be bifurcated into two parts. The jury was advised that a separate sentencing would be held if and only if the defendant were convicted of murder. The trial court went on to specifically advise the jury that "the purpose of my telling you this is to emphasize that **you are not to consider punishment or sentence at this phase of the case. You are only to determine the innocence or guilt of the defendant** based upon the evidence that will be introduced in the trial of the case."

Moore did not testify at the guilt phase of trial, but did elect to personally address the jury, pursuant to S.C.Code Ann. § 16-3-28 (1985 & Supp.2002).[1] Moore advised the jury that he was nervous and didn't know what to say. He then stated, "All I know is my life is in jeopardy here a second time." The state's objection was sustained and Moore was advised to "limit yourself to the testimony and evidence ... they are to determine the guilt or innocence sir." Moore then proceeded, "The state is seeking the death penalty on me, which means my very life is at stake." The court once again admonished Moore that the jury was simply determining guilt or innocence at this point and to limit himself to that. The court took a brief recess to allow Moore to speak with his attorney, after which the court advised him as follows:

Now, Mr. Moore, I want you to understand that you certainly have the right to make the closing argument to the jury. That's provided by for law. But, once again, you have to do it within the confines of the testimony and evidence that has been presented. You cannot go beyond that. You cannot, since you elected not to take the stand, you cannot testify.... You may not testify. You gave that right up. You can comment on the facts, what the evidence has revealed in this case. **Insofar as mentioning punishment, you are not to mention that, because we are not about that right now.** And if there are any violations of what I am laying

1. Pursuant to S.C.Code Ann § 16-3-28, "Notwithstanding any other provision of law, in any criminal trial where the maximum penalty is death or in a separate sentencing proceeding following such trial, the defendant and his counsel shall have the right to make the last argument."

out at this time, you are going to stand over here. Then I am going to stop your argument. And then we will proceed into the charge on the law.

(Emphasis supplied). Moore succinctly concluded his argument; the jury convicted him of all counts. Moore now asserts the trial court committed reversible error in precluding him from commenting on the fact that his life was at stake. We disagree.

We have previously recognized that a capital defendant's right to personally address the jury applies at both the guilt-or-innocence and sentencing phases of trial. *State v. Hall*, 312 S.C. 95, 439 S.E.2d 278 (1994); *State v. Rodgers*, 270 S.C. 285, 242 S.E.2d 215 (1978). However, we have not specifically addressed the parameters of that right, particularly as it pertains to the guilt phase of a capital trial. We find that allowing the defendant to stress to the jury that his life is at stake during the guilt phase of trial would mislead the jury to believe that it was permitted to consider punishment at the guilt phase of trial. This simply is not so; this phase of a capital trial is limited solely to the determination of guilt or innocence.

Our holding is consistent with our recent opinion in *Franklin v. Catoe*, 346 S.C. 563, 552 S.E.2d 718 (2001). In *Franklin v. Catoe supra*, we found the defendant did not knowingly waive his statutory right to personally address the guilt phase jury. However, we found Franklin had demonstrated no prejudice from denial of this right, stating, "this error occurred during the guilt phase, where the jury is confined to determining whether Franklin committed the crime, not whether he deserved the death penalty. Had Franklin been apprised of his right to address the jury during closing, and had he chosen to do so, he would have been arguing for his innocence, not pleading for his life." 346 S.C. at 573, 552 S.E.2d at 724. It is patent from this language in *Franklin* that a guilt phase closing argument pursuant to § 16-3-28 does not encompass the right to stress that the defendant is "on trial for his life."

Further, as noted previously, the trial court here specifically instructed the jury that it was not permitted to consider punishment at the guilt-or-innocence stage, but that, if Moore

were found guilty, there would be a second, sentencing phase of trial at which his punishment would be determined. We find the trial court properly limited Moore's argument. *See Hoeffner v. The Citadel*, 311 S.C. 361, 429 S.E.2d 190 (1993) (noting that arguments which invite the jury to base its verdict on considerations not relevant to the merits of the case are improper); *State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760 (1997) (trial judge is allowed discretion in dealing with the range and propriety of closing argument to the jury, and rulings on such matters will not be disturbed absent an abuse of discretion).

## 2. SENTENCING PHASE CLOSING

■ At the sentencing phase of trial, prior to closing arguments, the court advised Moore that he once again had the right to "have a closing argument regarding the sentence imposed .... and, once again, the statement that you would make to the jury would have to be confined to the evidence that has been presented and to the issues concerning the sentence imposed." Moore advised the trial court that he would not address the sentencing phase jury.

Moore now asserts his waiver of the right to make a closing argument to the sentencing jury was involuntary due to the trial court's admonition to him that "once again, the statement that you would make to the jury would have to be confined to the evidence that has been presented and to the issues concerning the sentence imposed." Essentially, Moore asserts this limitation prevented him the opportunity to make a closing argument asking for mercy and/or expressing feelings of remorse, such that his waiver of the right to address the sentencing phase jury was not knowing and voluntary.

This argument is procedurally barred. At trial, Moore did not assert that the trial judge's comments prohibited him from asking for mercy and/or expressing feelings of remorse; he simply advised the court that he did not intend to address the sentencing phase jury. His failure to raise this contention to the trial judge precludes review of the issue on appeal. *State v. Perez*, 334 S.C. 563, 514 S.E.2d 754 (1999); *State v. Williams*, 303 S.C. 410, 401 S.E.2d 168 (1991)(issue must be

raised to and ruled upon by trial judge to be preserved for appellate review).

■ Moreover, to the extent the trial court's comment could feasibly be viewed as limiting Moore's ability to express remorse to the sentencing phase jury, the matter is more appropriately addressed in a post conviction relief (PCR) action. As noted above, the only comment made by the trial court was that Moore could address the sentencing jury as to "the issues concerning the sentence to be imposed." This statement arguably encompasses the right to argue remorse and mercy. There is no further explanation of what this sentence means, nor any objection to it. On the present record, it is simply impossible to determine precisely what the trial court meant by this statement, or what Moore understood it to mean. In the PCR context, however, a court could analyze all the facts surrounding the trial to determine if Moore knowingly and intelligently waived his rights under section 16–3–28. *See Franklin v. Catoe*, 346 S.C. 563, 552 S.E.2d 718 (2001)(noting that PCR process is specifically designed to allow for an inquiry into the relevant facts surrounding the adequacy of a defendant's information and/or waiver of rights). Accordingly, given the lack of objection and failure to raise the present issue at trial, Moore's remedy, if any, is through PCR.

## CONCLUSION

Moore's convictions and sentences are affirmed. The death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of aggravating circumstances is supported by the evidence. Further, the death penalty is not excessive or disproportionate to the penalty imposed in similar capital cases. *See State v. Simpson*, 325 S.C. 37, 479 S.E.2d 57, *cert. denied*, 520 U.S. 1277, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1997); *State v. George*, 323 S.C. 496, 476 S.E.2d 903 (1996), *cert. denied*, 520 U.S. 1123, 117 S.Ct. 1261, 137 L.Ed.2d 340 (1997); *State v. Sims*, 304 S.C. 409, 405 S.E.2d 377 (1991), *cert. denied*, 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed.2d 434 (1992); *State v. Patterson*, 285 S.C. 5, 327

S.E.2d 650 (1984), *cert. denied,* 471 U.S. 1036, 105 S.Ct. 2056, 85 L.Ed.2d 329 (1985).

**AFFIRMED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice THOMAS L. HUGHSTON, JR., concur.