**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4

RICHARD BERNARD MOORE,

Petitioner – Appellant,

v.

BRYAN P. STIRLING, Commissioner, South Carolina Department of Corrections;
WILLIE DAVIS, Warden of Kirkland Reception and Evaluation Center,

Respondents – Appellees.

Appeal from the United States District Court for the District of South Carolina, at Florence.
Mary G. Lewis, District Judge.  (4:14-cv-04691-MGL)

Argued:  September 20, 2019                           Decided:  March 3, 2020

Before WILKINSON, WYNN, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judges
Wilkinson and Wynn joined.

**ARGUED:**  Lindsey S. Vann, JUSTICE 360, Columbia, South Carolina, for Appellant.
William Edgar Salter, III, OFFICE OF THE ATTORNEY GENERAL OF SOUTH
CAROLINA, Columbia, South Carolina, for Appellees.  **ON BRIEF:**  Christopher W.
Adams, ADAMS & BISCHOFF, P.C., Charleston, South Carolina, for Appellant.  Alan
Wilson, Attorney General, Donald J. Zelenka, Deputy Attorney General, Melody J. Brown,
Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF
SOUTH CAROLINA, Columbia, South Carolina, for Appellees.

RICHARDSON, Circuit Judge:

This is a habeas appeal.  In 2001, a South Carolina jury convicted Richard Bernard Moore of murder, armed robbery, assault with intent to kill, and possession of a firearm during the commission of a violent crime.  He received a death sentence, which the South Carolina Supreme Court upheld on direct appeal.  After an extensive hearing, the state court rejected Moore's request for post-conviction relief based on the alleged ineffectiveness of his trial counsel.  Now, Moore petitions this Court for a writ of habeas corpus.

Moore advances two ineffective-assistance-of-counsel claims previously rejected by the state post-conviction court.  First, Moore claims his trial counsel were deficient in challenging the physical evidence from the crime scene.  Second, he asserts his trial counsel were deficient in presenting mitigation evidence in the penalty phase of the trial.  Moore concedes that the state court rejected both these claims, and he does not challenge the state court's reasoning.  Rather, he argues that the district court should have reviewed his claims de novo rather than applying the deference to state courts that is generally required by federal habeas law.  *See* 28 U.S.C. § 2254(d).

Moore describes a contorted path to avoid deferential review.  According to Moore, new evidence "fundamentally alters" these two ineffective-assistance-of-counsel claims so that the federal claims he now advances are distinct, new claims.  Since he did not present these "new" claims to the state court, Moore reasons they are unexhausted and thus defaulted.  And although we are generally precluded from considering defaulted claims, Moore argues that we must excuse his default because his state post-conviction counsel

2

were ineffective. If we were to excuse his default, then we would remand to the district court to assess his two "new" claims de novo with no deference to the state court.

We cannot follow Moore down this twisted road. The new evidence *does not* fundamentally alter the heart of the two ineffective-assistance-of-counsel claims presented to the state court. So the district court properly deferred to the state court rejection of these claims.

Moore also advances a third ineffective-assistance-of-counsel claim. His trial counsel did not legally challenge the prosecutor's discretionary decision to seek the death penalty. Moore argues that this failure constituted ineffective assistance. Moore acknowledges he defaulted this claim by not presenting it to the state court. But he asks us to excuse his failure to exhaust this claim. We cannot do so because Moore cannot make a substantial showing that his trial counsel were ineffective for not challenging the prosecutor's decision.

## I. Background

### A. The 1999 murder and armed robbery

In the early morning of September 16, 1999, a dealer refused to sell crack cocaine to Moore because Moore could not pay for the drugs. In want of cash, Moore decided to rob Nikki's Speedy Mart in Spartanburg County, South Carolina. That morning, James Mahoney tended the Speedy Mart counter while a customer played video poker. The store owner kept a .45 caliber semi-automatic pistol behind the counter, and Mahoney carried a .44 caliber handgun in his waistband for protection.

Moore entered the Speedy Mart, walked to the cooler, and then approached the counter. Overhearing a quarrel, the video-poker customer turned towards the counter and saw a scuffle. Moore, holding both of Mahoney's hands with one of his own, pointed the .45 at the customer and ordered him not to move. Moore then fired at the customer, who dropped to the floor and played dead. The customer then heard several gunshots while Mahoney and Moore struggled.[1]

After hearing someone leave, the customer stood up and saw that Mahoney had been shot. Although the customer dialed 911, Mahoney died within minutes from a gunshot through the heart. Stippling around Mahoney's chest wound signified a close-range gunshot. Another gunshot wound, to his arm, lacked stippling and—depending on the positioning of Mahoney's body at the time of the shooting—may have been caused by the same bullet.

Moore—bleeding from a .44 caliber gunshot wound to his left arm—drove not to the hospital, but straight to his drug dealer's home to buy crack cocaine. Moore told his dealer that he had been shot and said, "I done something bad, and I got to go turn myself in, and I got money." J.A. 2675. Not wanting to get involved, the dealer refused to sell to Moore or to drive him to the hospital.

---

[1] Crime-scene investigators found Moore's DNA inside the store and on the murder weapon. Inside the store, they also found six .45 caliber casings, two lead bullet cores, and two .45 caliber cartridges, as well as several bullet fragments consistent with having been fired by the .45 caliber pistol. The .44 caliber pistol was fired only once, striking Moore. It was discovered next to the victim's body. Investigators also found a meat cleaver, which did not belong to the store.

4

As he left the drug dealer's house, Moore accidentally crashed his truck into a telephone pole. A sheriff's deputy found the wreck and approached Moore, who was bleeding profusely. As the deputy ordered him to the ground, Moore repeatedly shouted, "I did it, I did it, I give up, I give up." J.A. 2665. A bag with $1,408 from the Speedy Mart was in the front seat of Moore's truck, as was an open pocketknife. And the .45 caliber murder weapon was found discarded on a nearby highway. At the hospital, Moore claimed to have both cocaine and alcohol in his system.

## B.   Moore's trial

South Carolina prosecutors tried Moore as a capital defendant, bifurcating his trial into guilt and sentencing phases. Though he did not testify during the trial, at the end of the guilt phase, Moore exercised the right of capital defendants to address the jury personally in closing argument. *See* S.C. Code § 16-3-28. The jury found Moore guilty of all offenses—murder, armed robbery, assault with intent to kill, and possession of a firearm during commission of a violent crime.

In the sentencing phase, the state presented victim-impact testimony and evidence of Moore's criminal history. The impact of Mahoney's death was discussed by his father, sister, and brother, along with coworkers and friends. On Moore's criminal history, the state introduced evidence of his extensive criminal activities in Michigan and South Carolina—including unlawful possession of a weapon, an attempted breaking and entering to steal handguns, assault and battery with attempted robbery, assault and battery of a high and aggravated nature, and another robbery of a store clerk. In mitigation, Moore's trial counsel called Moore's wife and stepson. They each pleaded for Moore's life and testified

5

that Moore was a good father. Moore chose not to address the jury at the close of the sentencing phase.

The jury recommended a sentence of death, which the trial judge imposed in 2001. The South Carolina Supreme Court upheld the verdict and sentence on direct appeal. *State v. Moore*, 593 S.E.2d 608 (S.C. 2004).[2]

### C.     Moore's state post-conviction relief proceedings

In state post-conviction-relief ("PCR") proceedings begun in 2004, Moore claimed his trial counsel were ineffective. The state court heard evidence in 2011 and found that Moore failed to establish, under *Strickland v. Washington*, 466 U.S. 668 (1984), that counsel's representation was constitutionally deficient or that Moore was prejudiced.

The state PCR court heard testimony from Moore and found him "not credible." J.A. 4345. Moore testified that he entered the Speedy Mart only to purchase items. At the counter, Moore claimed that he argued with Mahoney over change. That argument escalated, Moore contended, when Mahoney used a racial slur, pulled out a gun, and ordered Moore to leave the store. According to Moore, the two struggled over the gun; it fired, then jammed; Moore gained possession of it; and as he worked to unjam it, Mahoney

---

[2] The ruling of the South Carolina Supreme Court—not at issue—rejected two claims about closing arguments. *Moore*, 593 S.E.2d at 610–12. It also conducted a mandatory sentencing review, finding (1) the death sentence was not "imposed under the influence of passion, prejudice, or any other arbitrary factor," (2) "the evidence supports the jury's . . . finding of a statutory aggravating circumstance," and (3) the sentence of death was neither "excessive [n]or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." S.C. Code § 16-3-25(C); *see Moore*, 593 S.E.2d at 612.

pulled out the second gun and shot him. He claimed that he shot Mahoney only after Mahoney shot him—and that he did so "blindly," shooting around a pillar behind which he had sheltered after being shot. J.A. 3713. Moore also denied having ever intentionally fired at the customer, claiming that the gun "went off" during the struggle with Mahoney— despite the customer's testimony. J.A. 3709. Moore also claimed to have shot Mahoney from six feet away—despite the stippling around Mahoney's wound. And, in what the state court found "completely beyond belief," Moore contended that he only took the money as an afterthought when he stood over the man he had killed. J.A. 4345. Finally, Moore asserted that, after leaving the store with the cash, he drove to his drug dealer's house for help bandaging his wound—not to buy crack cocaine.

Moore raised ten ineffective assistance of counsel claims before the state court, but only two are relevant here. First, Moore claimed his counsel were ineffective for failing to adequately investigate and rebut the state's physical evidence ("physical-evidence claim"). At trial, Moore's counsel had employed a crime-scene analyst, a forensic pathologist, a private investigator, and a mitigation investigator. During the state PCR hearing, Moore's counsel supported the ineffectiveness claim with testimony from a crime-scene technician, Paul Dorman. He testified that of the six shell casings located at the crime scene, five were found on the customer side of the counter and one on the server's side, and he claimed that the latter must have come from someone shooting from behind the counter.[3] Moore argued

---

[3] At trial, Dorman had testified for the state as a crime-scene technician.

7

that—since Mahoney was behind the counter—this testimony supported his version of the events in which the first shot was fired while Mahoney still had the gun.[4] This, Moore asserted, supported the claim that Moore shot Mahoney defensively—in the heat of passion—after Mahoney first fired the .45 caliber handgun.

Second, Moore argued that trial counsel were ineffective for failing to present mitigation evidence ("mitigation-evidence claim"). He claimed that counsel failed to interview relatives and acquaintances who could testify to Moore's good qualities, childhood in Michigan, and struggle with addiction. In support, Moore's PCR counsel submitted deposition testimony from four of Moore's aunts and uncles and two of Moore's brothers.

The state PCR court rejected both of these ineffective-assistance-of-counsel claims. As to the physical-evidence claim, the court found that Moore's trial counsel had conducted a reasonable investigation to confront and rebut the state's evidence. And Moore's counsel had made a reasonable decision not to attack the state's physical evidence at trial. The court also rejected the testimony offered about how or why the .45 shell casing ended up behind the counter, concluding—as the state's firearm examiner explained at trial—that "there were a myriad of ways in which the fired shell casing found behind the counter could have ended up behind the counter." J.A. 4352. The state court also found that Moore's new testimony offered by Dorman was neither credible nor admissible. Moreover,

---

[4] As Moore chose not to testify at trial, the version of the events that he testified to during the PCR hearing—and had told trial counsel—was never before the jury.

8

Moore's experts that could have been used at trial to challenge the physical evidence shared the opinion that Moore shot the victim from behind the counter. Introducing this opinion would have weakened Moore's defense and mitigation argument.

As to Moore's mitigation-evidence claim, the state court found that trial counsel's testimony about the mitigation investigation (including hiring both a private investigator and a mitigation specialist who tried to contact family members in Michigan) was credible. In contrast, the court found that the claims by Moore's family members in Michigan that they would have been willing to testify at trial were "not credible given this entire record." J.A. 4409. And the court found that no prejudice existed because "even if [these family members had been called to testify at trial,] there is no reasonable probability the result of the sentencing proceeding would have been different." J.A. 4416. *See Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (To establish prejudice, the defendant must show "'a reasonable probability that a competent attorney, aware of [the available mitigating evidence], would have introduced it at sentencing,' and 'that had the jury been confronted with this . . . mitigating evidence, there is a reasonable probability that it would have returned with a different sentence.'").

The Supreme Court of South Carolina denied review in 2014, and the United States Supreme Court denied certiorari.

### D. Moore's federal habeas petition

Moore then filed this federal habeas petition under 28 U.S.C. § 2254. Although Moore raised eight grounds for relief, only three ineffective-assistance-of-counsel claims are on appeal. Moore again advances his physical-evidence and mitigation-evidence

9

claims. He also raises a third claim—not presented in state court—that trial counsel were ineffective for failing to challenge the prosecutor's discretionary decision to seek the death penalty ("prosecutorial-discretion claim").

In support of the physical-evidence claim, Moore sought to present new evidence that had not been offered during the state proceedings. The new evidence included trial counsel's purported notes, a declaration from an expert witness with experience in forensics and crime-scene reconstruction who was not contacted before trial, and a declaration from a crime-scene-investigation expert, Donald Girndt, whom trial counsel had consulted during trial preparation but ultimately decided against calling to testify.

As for the mitigation-evidence claim, Moore asserted that new evidence resulting from an investigation of Moore's childhood revealed the effect of the crack epidemic on Moore's childhood community, other details about his childhood, his good character and struggles with addiction, and additional friends and relatives willing to testify on his behalf.

The magistrate judge—applying the statutory deferential standard of review—recommended denying relief on all claims. Moore objected to the application of deference to his physical-evidence and mitigation-evidence claims. According to Moore, because his claims were not fairly presented to the state court, the claims were not exhausted, the resulting default should be excused, and the claims must be assessed de novo without deference to the state court's determinations. The district court disagreed. On the physical-evidence claim, the district court found that Moore's claims were presented and rejected on the merits. While the new evidence "strengthen[ed] his claim," it did not "fundamentally alter" the physical-evidence claim—in other words, the heart of that claim

10

remained the same. J.A. 1379 (citing *Gray v. Zook*, 806 F.3d 783, 799 (4th Cir. 2015)). Likewise, the district court held that Moore's mitigation-evidence claim was presented and adjudicated on the merits by the state PCR court.

The district court also found that Moore procedurally defaulted his new prosecutorial-discretion claim. Because Moore failed to show "cause" for and "prejudice" from that default, the district court refused to excuse it. J.A. 1381. We granted a certificate of appealability on these issues.

## II. Discussion

### A. Standard of review

Our federal system entrusts state courts with the administration of their own criminal justice systems—a federal court may grant habeas relief to a state prisoner only in "exceptional circumstances." *Richardson v. Branker*, 668 F.3d 128, 138 (4th Cir. 2012). Confirming that "state courts are the principal forum for asserting constitutional challenges to state convictions," "the basic structure of federal habeas jurisdiction" limits our review of state convictions. *Harrington v. Richter*, 562 U.S. 86, 103 (2011). We generally may entertain a prisoner's habeas petition raising federal claims only if he has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).[5] And where the state court has denied those claims "on the merits," we must review that decision with great

---

[5] Section 2254(b)(1)(B) permits an unexhausted claim where "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."

11

deference—disturbing it only if no fairminded jurist could agree. *Id.* § 2254(d); *see Harrington*, 562 U.S. at 103.

These exhaustion (§ 2254(b)) and deference (§ 2254(d)) requirements work together to ensure the primacy of state-court decision-making. The former requires a prisoner to present each claim to the state court. If he does not, and the prisoner is barred from now raising the claim in state court, then we treat each unexhausted claim as procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Breard v. Pruett*, 134 F.3d 615, 619–20 (4th Cir. 1998). And prisoners cannot generally rely on defaulted claims. *O'Sullivan*, 526 U.S. at 848.

The deference requirement for claims rejected on the merits by the state court requires us to apply the statutorily prescribed deferential review and limits us "to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). So together, §§ 2254(b) and 2254(d) work as "complements" that "ensure that state court proceedings are the central process—not just a preliminary step for a later federal habeas proceeding." *Harrington*, 562 U.S. at 103; *see also Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

Even so, a "narrow" exception exists for state prisoners to raise unexhausted federal claims. *Davila v. Davis*, 137 S. Ct. 2058, 2068 (2017); *see Martinez v. Ryan*, 566 U.S. 1, 16–17 (2012). If a prisoner can show "cause" for a failure to exhaust and "prejudice" from the alleged violation of federal law, we may excuse the procedural default. *Davila*, 137 S. Ct. at 2062. Under *Martinez*, a prisoner may establish cause where his post-conviction counsel was constitutionally ineffective in failing to raise and exhaust a claim of

12

"ineffective assistance of trial counsel" where the State "effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Id.* at 2062–63 (citing *Martinez*, 566 U.S. 1).[6]  Of course, this exception applies only if the prisoner's claims have, in fact, not been exhausted.  *Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015).

On appeal, Moore does not seek to overcome the deferential standard of review. Rather, he seeks to avoid it altogether.  Moore argues that all three of his ineffective-assistance-of-counsel claims have been defaulted.  But he argues that we should excuse these defaults based on the ineffectiveness of his post-conviction counsel and remand for the district court to assess all his claims de novo.  We disagree.

B.      Physical- and mitigation-evidence claims

Although Moore raised his physical- and mitigation-evidence claims in his state PCR proceedings, he argues that new evidence so "fundamentally alters" these claims that

---

[6] *Martinez* provides an exception to the general rule that ineffective assistance in state post-conviction proceedings does not qualify as "cause" to excuse a procedural default. *Davila*, 137 S. Ct. at 2062 (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). The *Martinez* exception exists because the prisoner has essentially been deprived "the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims" if at the PCR hearing (*i.e.*, his first opportunity to claim trial counsel's ineffectiveness), his post-conviction counsel is also ineffective in presenting his claim about trial counsel's ineffectiveness. *Martinez*, 566 U.S. at 11–12.  It only applies when the State diminishes prisoners' ability to file such claims, by "deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed." *Id.* at 13.  Only in this narrow instance, "reflect[ing] an equitable judgment[,]" is a federal habeas court warranted to excuse the procedural default and review the claim. *Id.*

13

they are new claims not presented to the state court by his PCR counsel. If so, then the claims are defaulted. Moore then contends his default should be excused—and his claims reviewed with no deference to the state court—based on his PCR counsel's ineffectiveness in failing to present these claims to the state court.[7]

To begin, we must determine whether Moore presented these claims to the state court. A federal habeas claim has been presented to the state court when that claim remains fundamentally the same as the one presented to the state court. In contrast, a claim has not been presented to a state court when new evidence "fundamentally alter[s]" the "substance" of the claim so as to make the claim a new one. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Gray*, 806 F.3d at 799.

Moore's physical-evidence and mitigation-evidence claims were presented in substantially identical terms to the state court. And the legal arguments made remain substantially the same. Even so, Moore argues that his new evidence fundamentally alters the nature of the claim. But, so long as "the prisoner has presented the substance of his claim to the state courts," the presentation of additional facts does not mean that the claim was not fairly presented. *Vasquez*, 474 U.S. at 258. When new evidence only elaborates

---

[7] As both parties accept this framework, we analyze it in these terms. Thus, we do not address the argument that "*Martinez*'s highly circumscribed, equitable exception," *Davila*, 137 S. Ct. at 2066, does not apply here because § 2254(e)(2) provides an express statutory directive for what is needed to hold an evidentiary hearing where "the applicant has failed to develop the factual basis of a claim in State court proceedings." *Cf. Williams v. Taylor*, 529 U.S. 420, 440 (2000) (holding that, since the petitioner "fail[ed] to develop the factual basis of [his] claim in state court, we must determine if the requirements in the balance of § 2254(e)(2) are satisfied so that petitioner's failure is excused"). This question has not yet been presented, and we take no position on it today.

14

on the evidence presented in state court, the claim is not fundamentally altered into a new, and unexhausted, claim. *See id*.

We rejected an argument like Moore's in *Gray v. Zook*, 806 F.3d 783 (4th Cir. 2015). There, we held that, even while new evidence "strengthened the claim," it did not "fundamentally alter[]" the substance of the claim. *Id*. at 799. Gray had argued that his trial counsel was ineffective for failing to present evidence of his voluntary intoxication when the crimes occurred. In the state habeas proceeding, Gray had claimed that a particular clinical and forensic psychologist "could have provided expert testimony on Gray's use of PCP and other drugs." *Id*. at 798. And we rejected the argument that Gray's new evidence in the federal habeas proceeding—including affidavits from a clinical psychologist and a neuropharmacologist—fundamentally altered the claim, even though it strengthened the claim. This was so because the "heart of the claim remain[ed] the same: his trial attorneys should have done more to show how Gray's intoxication at the time of the crimes lessened his culpability." *Id*. at 799. Without a change to the nature of the claim, the type or quantum of evidence supporting it did not fundamentally alter the claim.[8]

_____

[8] In *Wise v. Warden*, we held that the "exhaustion doctrine is not satisfied where a federal habeas petitioner presents evidence which was not presented to the state court and which places his case 'in a significantly different and stronger evidentiary posture than it was when the state courts considered it.'" 839 F.2d 1030, 1033 (4th Cir. 1988) (quoting *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983)). This standard is not satisfied with new "bits of evidence" but requires "critical" evidence that makes his claim both stronger *and* significantly different. *Id*. This is simply a different way of saying that the nature of the claim must be fundamentally altered, not just made stronger. There, we held that direct proof of an agreement between a key witness and the state placed Wise's *Brady* claim in this fundamentally different posture compared to the previously raised claim based on bald, unsupported conjecture. *Id*. at 1034; *see, e.g.*, *Gray*, 806 F.3d at 799 ("*Wise* stands for the

15

As a result, the claim presented to the federal court was not new but merely an elaboration on the claim presented to the state court.

Here, Moore's state PCR counsel supported the physical-evidence claim with testimony from a crime-scene technician, Paul Dorman. Dorman testified that the shell casing found behind the counter must have come from someone firing the gun from behind the counter. Moore's trial counsel, Michael Morin, also testified during the PCR hearing. He explained that before trial he retained a forensic pathologist and a crime-scene expert, both of whom told him that they believed Moore shot the victim from the employee side of the counter. Morin chose not to call those experts because he did not want to present evidence to the jury that Moore shot the victim from behind the counter. Morin also explained that, despite discussions about Moore testifying (Morin felt it was the only way to get a jury instruction on manslaughter or self-defense), Moore refused to testify.

In an effort to show that the federal physical-evidence claim was new and not the same claim as the one presented to the state court, Moore's federal habeas counsel presented a supplemental affidavit from a private forensic investigator, Robert Tressel. Like the crime-scene technician who testified in the state PCR proceeding, Tressel relied on the crime-scene evidence to conclude that the first shot was likely fired while Mahoney still had the gun behind the counter. And he concluded that a live .45 caliber round on the counter was consistent with a struggle between Moore and Mahoney for control of the

_____

proposition that a petitioner may not support a claim in state court with 'mere conjecture' and subsequently provide the necessary evidentiary support for the claim on federal habeas review.").

16

weapon. He also then drew general conclusions about the consistency between the crime scene and Moore's PCR testimony (testimony not presented to the trial jury). Federal counsel also provided an affidavit from Donald Girndt, who also opined that the live .45 caliber round was consistent with a struggle. Girndt described how the stippling around the victim's gunshot wound showed that the shot was fired from about 18 inches away.[9] This, he speculated, means that Moore could have shot the victim either over the counter or from behind the counter.

As in *Gray*, this newly proffered evidence fails to change the heart of the claim and merely strengthens the evidence presented in the state PCR hearing. There, Dorman testified that the cartridge casing found behind the counter must have come from someone firing the gun from behind the counter. The state PCR court determined that the testimony was not credible—along with noting Dorman's lack of expertise—given the many ways in which the casing could have ended up behind the counter.

Moore's federal counsel also argues that the state court's rejection of the crime-scene investigator's testimony effectively means that, in the state PCR proceeding, Moore offered no evidence or only "mere conjecture." *Gray*, 806 F.3d at 799 (quoting *Winston v. Kelly*, 592 F.3d 535, 551 (4th Cir. 2010)). As the PCR-hearing record makes clear, that is

---

[9] Other testimony (at trial and during PCR) suggested that the stippling showed that the shot was from 12-15 inches away. J.A. 2925, 3771–72.

not true.[10]  Moore presented testimony from a crime-scene investigator and forensic pathologist, along with a description of the forensic work done by the experts retained by trial counsel.  While the state PCR court did not credit Moore's evidence for a variety of reasons, it was well beyond mere conjecture.

Moore's claim that his counsel were ineffective in developing mitigation evidence likewise fails.  During the state PCR proceeding, counsel presented depositions from six family members in Michigan to show that they could have offered mitigation testimony.  Moore's trial counsel described the mitigation investigation, including the work of the retained mitigation investigator, Drucy Glass, and their inability to contact family members in Michigan (including Moore's general refusal to assist).

In the federal habeas proceeding, Moore now seeks to rely on affidavits from other individuals who knew Moore as a child.  They would provide information about the community in which Moore was raised (including the prevalence of drugs), along with Moore's drug abuse as a child and success in the classroom and on the athletic field before he turned to robbery to support his drug habit.

But this added evidence does not fundamentally alter the mitigation-evidence claim and render it a new claim.  Instead, the new evidence serves only to bolster and expand upon the mitigation evidence presented during the trial and the state PCR proceeding.  It does not alter the substance of the claim.  As the district court explained, the "heart" of

---

[10] The state court issued a hundred-page decision rejecting the PCR petition, and the PCR record in the appendix spans more than a thousand pages with hundreds of pages of transcripts.

18

Moore's state PCR claim was that his trial counsel were ineffective for failing to investigate and present certain mitigation evidence. J.A. 1387. In particular, before the PCR court, Moore's claim was that his trial counsel failed to investigate into where Moore was raised, which "would have revealed [Moore's] good character and struggle with addiction, and would have provided friends or relatives willing to testify on [Moore's] behalf." J.A. 1388. Later, before the district court, "[t]hat claim [was] also at the heart" of Moore's mitigation-evidence claim. J.A. 1388. As the magistrate judge concluded, "At bottom, the claim remains the same—his trial attorneys should have done more to show how Moore's family upbringing and his history of drug use may have played a role in Mahoney's murder." J.A. 1299. While the mitigation evidence strengthened Moore's claim that trial counsel should have done more, the evidence did not fundamentally alter the claim since "[t]he heart of the claim remain[ed] the same." *Gray*, 806 F.3d at 799.

The new evidence Moore presented in support of his physical-evidence and mitigation-evidence claims fails to fundamentally alter the federal claims and render them new claims that were not presented to the state court. So the district court properly applied the statutorily mandated deferential review for claims presented to, and rejected on the merits by, the state court.

### C. Prosecutorial-discretion claim

Moore's third claim—presented for the first time before the district court—is that trial counsel were ineffective for failing to challenge the prosecutor's decision to seek the death penalty. The district court dismissed the claim. We agree with the district court that

this claim was procedurally defaulted and that none of the exceptions to the default apply here.

Moore seeks relief from his default under the *Martinez* exception because his PCR counsel were constitutionally ineffective in failing to raise this ineffective-assistance-of-trial-counsel claim in state court. To establish "cause" to overcome procedural default under *Martinez*, a prisoner must show: (1) the underlying ineffective-assistance-of-trial-counsel claim is "substantial"; (2) the prisoner was not represented or had ineffective counsel during the state PCR proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required the prisoner to bring the claim in the initial-review collateral proceeding. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

Moore fails at step one. "Cause" to excuse a procedural default requires that the attorney error amount to *constitutionally* ineffective assistance of counsel. *Davila*, 137 S. Ct. at 2062. And so the defendant's ineffective assistance claim must be substantial— that is, it must have "some merit" under the governing ineffective-assistance-of-counsel standards. *Martinez*, 566 U.S. at 14. Thus, Moore must show that trial counsel's performance was so deficient as to fall below an objective standard of reasonableness. And that deficiency must have prejudiced the defense in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–96.

Moore fails to make a substantial claim that trial counsel were deficient for failing to raise an Eighth Amendment challenge to the prosecutor's discretionary decision to seek the death penalty. This case fell within South Carolina's statutory scheme narrowing the

20

use of the death penalty to murders with aggravating circumstances. *See* S.C. Code § 16-3-20(C)(a)(1)–(12) (listing the statutory aggravating circumstances). And the jury found that this case contained each of the statutory aggravating circumstances alleged by the prosecution in S.C. Code § 16-3-20(C)(a)(1)(e) & (3)–(4) and thus recommended a sentence of death. *See* J.A. 524.

In addition, as also required by statute, the South Carolina Supreme Court held that "[Moore's] death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of aggravating circumstances is supported by the evidence. Further, the death penalty is not excessive or disproportionate to the penalty imposed in similar capital cases." *State v. Moore*, 593 S.E.2d at 612; *see* S.C. Code § 16-3-25(C). As a result, Moore cannot make a substantial claim that trial counsel were constitutionally ineffective for failing to challenge the prosecutor's discretionary decision to seek the death penalty. *See McCleskey v. Kemp*, 481 U.S. 279, 305–08 (1987). Because Moore cannot show that his underlying ineffective-assistance claim has merit, he cannot satisfy the requirement for "cause" under *Martinez*. So we must deny relief on this claim.

\*　　　　\*　　　　\*

A defendant's right to the effective assistance of counsel is a constitutional cornerstone in adversarial proceedings. But state courts have the primary responsibility for safeguarding this right in their own criminal proceedings. As a federal court, our statutorily defined habeas review is limited, reflecting our constitutional design and respect for states' own sovereignty. For the reasons stated above, the district court's dismissal of Moore's petition for habeas relief is

21

*AFFIRMED.*